FOURNET, Justice.
 

 The plaintiffs, Edwin V. Felder and Leo Miscar, are prosecuting this appeal from the judgment of the lower court dismissing, under exceptions of no cause and no right of action filed by the Police Jury of Livingston Parish, their suit to have declared null, void, and of no effect the local option election held in Ward 2 of the said parish and the ordinance passed pursuant thereto prohibiting and making unlawful the selling of or otherwise trafficking in alcoholic and intoxicating liquors.
 

 There is nothing in the record to show on what ground the exceptions were based as the grounds are not stated in the excep
 
 *553
 
 tions themselves and the trial judge did not render an opinion or assign any written reasons for his dismissal of the suit. However, we find from the statement of counsel for the Police Jury in his brief that “The exceptions of no cause and no right of action filed were based on the primary principle that a complainant must allege, in any election contest, that had it not been for the fraud or irregularities complained of the result would have been different.”
 

 While the petition is somewhat lengthy and inartistically drawn, we think the well pleaded facts, which, for the purpose of disposing of these exceptions, must be accepted as true, are as follows: That the plaintiffs, residents and taxpayers of Ward 2 of Livingston Parish, are now and have been for a number of years engaged in the business of selling or otherwise dealing in alcoholic and intoxicating liquors; that an election was held in said ward on October 19, 1943, for the purpose of determining whether or not the business of manufacturing, selling, or dealing in or with liquor .should be licensed or permitted in Ward 2 under the resolution adopted by the Police Jury at its regular meeting held on September 8, 1943, calling such election upon a petition certified by the Registrar of Voters for Livingston Parish as containing the signatures of more than 25% of the qualified electors of the said ward; that this election and the ordinance adopted pursuant to the results thereof are null and void for the following reasons:
 

 (1) The petition upon which the Police Jury acted did not contain the requisite 25% of the qualified electors of the ward because many names were duplicated, many were signed by persons other than those purporting to sign it, and a number of the persons purporting to sign it were dead.
 

 (2) No notice of the meeting at which this petition was to be considered was given to the public so that formal protest might be made by those opposing it.
 

 (3) The Police Jury, in adopting the resolution ordering the election in conformity with the provisions of Act No.
 
 17
 
 of the First Extraordinary Session of the Legislature for 1935, failed to designate what state legislature was intended.
 

 (4) That the election was fraudulently and illegally conducted because it was conducted in violation of law and contrary to the express provisions of the resolution calling the election wherein the Secretary of the Police Jury was directed to furnish the Chairman of the Board of Supervisors of Livingston Parish with a certified copy of the resolution and that board was requested to appoint the necessary commissioners and other election officials in conformity with the law for (a) there was an agreement between the Chairman of the Board of Supervisors, the Secretary of the Police Jury, and the leader of the prohibition movement to select commissioners favoring prohibition, such election officials being selected by the leaders of the prohibition movement at a secret meeting and handed to the Chairman of the Board of Supervisors who, without calling a meeting of the board or otherwise obtaining the approval of the other members thereof, appointed the officials thus selected to conduct
 
 *555
 
 the election; (b) that of the officials thus selected one in Precinct 2 and two in Precinct 4 were changed by the Chairman of the Dry League before the polls opened; (c) that the election was otherwise illegally and fraudulently conducted because (aa) the officials at certain precincts were not sworn; (bb) there were not the required number of commissioners at some of the precincts, only two commissioners being in some and in one only one commissioner and a clerk; (cc) only one commissioner signed the tally sheets in a number of instances, such commission signing for himself and for the absent commissioners; (dd) the commissioners generally canvassed and attempted to influence voters at the polls to vote in favor of prohibition, and (ee) the commissioners left the precincts to which they were assigned in some instances and circulated throughout the other precincts canvassing and soliciting votes.
 

 (5) That the election officials fraudulently counted votes that were never cast because out of the 1,600 qualified to vote in the ward the 400 in the armed forces were denied the right to vote and it was inconceivable that over 900 of the remaining 1,200 would have voted.
 

 There i,s an array of decisions in our jurisprudence holding that in an election contest the contestant must not only allege specific irregularities in the conduct of an election, but must also allege and show that, but for the occurrence of such irregularities the results of the election would have been different, Lanier v. Gallatas, 13 La.Ann. 175; State v. Mason, 14 La.Ann. 505; Andrews v. Blackman, 131 La. 355, 59 So. 769; Reeves v. Dean, 138 La. 889, 70 So. 871; and Lafargue v. Galloway, 184 La. 707, 167 So. 197, and this principle has been applied in local option election contests. Watson v. Police Jury of LaSalle Parish, 204 La. 633, 16-So.2d 208. However, in the instant case the plaintiffs are contending that the calling of this election by the Police Jury was unauthorized and that the election itself was illegally held.
 

 The State of Louisiana delegated that part of its police powers relative to the regulation and control of the traffic of alcoholic liquors to certain of its political subdivisions by its adoption of Act No. 17 of the First Extraordinary Session of 1935. The first section of this act declares: “That,
 
 if
 
 any parish, ward or municipality,
 
 at an election held for that purpose, which shall be conducted as nearly as possible in-accordance with the election laws of the State,
 
 shall, by a majority vote of its duly qualified electors voting at any such election, determine that the business of producing, manufacturing, rectifying, blending or handling, selling, using, distributing, storing or consuming of alcoholic or intoxicating liquors as defined in Section 2 of this Act, otherwise than when prescribed by a licensed physician as a medicine, in such parish, ward or municipality shall not be licensed or permitted therein, such business shall not be therein licensed or permitted.” The second section separates “alcoholic or intoxicating liquors” into two groups and defines them as follows : (a) Beer and other alcoholic liquors of an alcoholic content greater than a half of
 
 *557
 
 1% of alcohol by volume but not exceeding ■6% of alcohol by volume; and (b) malt, vinous, spirituous, alcoholic, or intoxicating liquors containing more than 6% of alcohol. It further provides that an election may be held in respect to the traffic in liquors as defined in both groups or in respect to either. Section 3 prohibits the granting of permits for the sale of such liquors in municipalities, wards, or parishes where prohibited as provided for in the act. Section 4 prescribes the procedure for the holding of elections, and while it provides that an election “shall be ordered * * *
 
 only
 
 upon petition of twenty-five per centum (25%) of the duly qualified voters * * * to be certified by the Registrar of Voters,” the legislators did not prescribe any specific formalities or details for the procedure other than as provided in Section 1 that the election “shall be ■conducted as nearly as possible in accordance with the election laws of the State,” and the provision in Section 5 that “Where the election laws do not otherwise provide, the governing authority calling the election shall provide in its ordinance or resolution the manner in which the election shall be conducted and the result thereof promulgated.” (Italics ours.)
 

 Thus it may be seen that in delegating the power to suppress the trafficking in liquor to designated political subdivisions, the legislature placed thereon certain limitations. One is that the election to determine the will of the majority of the qualified electors with respect to this proposition be called by the governing authority of the sub-division
 
 only
 
 when petitioned by. more than 25% of the qualified electors thereof. See Waggoner v. Grant Parish Police Jury, 203 La. 1071, 14 So.2d 855. Another is that the election be conducted in a legal manner, for, Section 1 of the act not only makes it mandatory that the election be conducted as nearly as possible in accordance with the election laws of the state, but also makes this a condition precedent to the exercise of the power thus delegated to it and of equal importance and dignity with the provision that such election be by a majority vote of the duly qualified electors voting at the election.
 

 There is no provision in the act that notice of the meeting at which the petition is to be considered by the Police Jury or other political sub-division shall be given to the public generally. When this petition, certified to by the Registrar of Voters as containing the signatures of more than 25% of the qualified electors of Ward 2, was presented to the Police Jury, it was its mandatory duty to order such election (see Drew v. Town of Zwolle, 185 La. 867, 171 So. 59), and the Police Jury, in ordering the election and following the legislature mandate that it be conducted as nearly as possible in accordance with the election laws of the state, incorporated, in the resolution, the provision “That the Secretary of this Police Jury be and he is hereby directed to furnish a certified copy of this resolution to the Chairman of the Board of Supervisors of Livingston Parish, and that the said Board be and is hereby requested to appoint the necessary commissioners and other necessary and usual election officials and generally to comply with
 
 *559
 
 the laws in connection with said special election.”
 

 Under the express provisions of Act No. 224 of 1940, it is the mandatory duty “of the Board of Supervisors of Election, thirty days prior to any election, to appoint three commissioners and one clerk to preside over the election at each polling precinct, and said commissioners and clerk * * * shall be appointed from lists to contain not less than six names furnished by each of the several * * * parties.” Section 12. In Section 17 of-this act it is made the mandatory duty of these election officials to proceed without interruption or delay to canvass and count the ballots in conformity with the specific requirements therein laid down. Section 21 provides that, as soon as the votes have been counted and the envelopes sealed as provided in the act, it .shall be the duty of the commissioners to sign and swear to the tally sheets.
 

 Plaintiffs have not only alleged that the election was illegally ordered, detailing certain irregularities in connection therewith, but they have also alleged, detailing the facts, that the commissioners were selected contrary to the express provisions of the resolution ordering the election and the law governing the same, the said commissioners having been selected pursuant to a scheme to control the election and having violated certain specified provisions of the election laws in carrying out such scheme. It is our opinion, therefore, that the allegations in their petition do set forth a cause of action.
 

 For the reasons assigned, the judgment of the lower court maintaining the exceptions of no cause and no right of action and dismissing plaintiffs’ suit is annulled and set aside, the exceptions are overruled, and the case is remanded to the lower court for further proceedings consistent with the views herein expressed.