358 So.2d 360 (1978)
Louis CHARBONNET, III
v.
Henry E. BRADEN, IV.
No. 9522.
Court of Appeal of Louisiana, Fourth Circuit.
April 14, 1978.
Tucker, Schonekas & Garrison, Gibson Tucker, Jr., Andry & Andry, Gilbert V. Andry, III, New Orleans, for plaintiff-appellee.
Murray, Murray, Ellis, Braden & Landry, Stephen B. Murray, Douglas, Nabonne & Wilkerson, Ronald P. Nabonne, New Orleans, for defendant-appellant.
Donald B. Ensenat, Asst. Atty. Gen., for State of Louisiana.
Before SAMUEL, REDMANN, LEMMON, STOULIG, BOUTALL, SCHOTT, BEER, GARSAUD and BAILES, JJ.
BOUTALL, Judge.
Candidate Louis Charbonnet, III contests the election of Henry E. Braden, IV to the office of Senator, Fourth State Senatorial District of Louisiana. The respondent filed exceptions of prescription and peremption which were overruled. On the merits the trial court ruled in favor of Charbonnet, and Braden appealed. The election and the resulting contest are within the provisions of Louisiana's new Election Code, effective January 1, 1978, Act 697 of 1976 as amended, now Revised Statutes, Title 18.

EXCEPTION OF PRESCRIPTION
R.S. 18:1406 A provides:
"An action objecting to candidacy or contesting an election shall be instituted by filing a petition in a competent court and posting a copy of the petition in a conspicuous place at the entrance of the office of the clerk of court where the petition is filed. The petition shall set forth in detail the grounds for the objection or contest."
Defendant contends that this action was not timely, because although the petition *361 was filed within five days after the date of the election, a copy of the petition was not posted in a conspicuous place at the entrance of the office of the clerk of court until the sixth day after the election.[1]
The Election Code does not allocate the responsibility for completing the mandated procedures, once the judicial machinery is put into action by the filing of a petition. Defendant's exception is based on the premise that the posting of the petition at the entrance of the clerk's office is a burden placed on the plaintiff in an election suit in order to toll the running of the peremptive period of R.S. 18:1405 B.
The statute requiring the posting cannot be reasonably interpreted to impose this burden on the plaintiff. The handling of petitions after timely filing is a function traditionally assigned to the clerk of court, and we perceive no intent of the Election Code to change this function, nor do we perceive any purpose for doing so.
We hold that a plaintiff in an election suit interrupts any period of prescription or peremption by filing a petition in a competent court, and any mandatory provisions thereafter relating to the handling of the petition do not affect the question of timely filing.

ON THE MERITS
In his petition plaintiff Charbonnet raises two bases on which he seeks to declare the election void: 1.) the polling place in Ward 7, Precinct 6 was moved just prior to the election from its location in the primary to a new location in a school within the geographical boundaries of another precinct, some ten or twelve blocks away; 2.) the tabulations on 34 voting machines show a total of sixty fewer votes counted for the candidates than the total amount of people voting.[2] Since the difference between the candidates was a total of 14 votes it is argued that the 60 votes are sufficient to have changed the course of the election. Plaintiff further pleaded a constitutional question which is not at issue herein.
The trial court found that the difference in the count of the votes was not due to malfunctioning of the voting machines, but was caused by errors of the voter in casting a ballot, that the amount of such votes were minimal, and that there was no reason to believe that re-voting in a new election would cause a different result. He resolves this issue in favor of defendant. However, on the issue of the location of the polling place, the court found as a fact that the polling place of Ward 7, Precinct 6, was not located within the precinct boundaries, stating:
"Simply stated, the provisions of L.S.A. 18-533 have been violated by those whose duty it was to follow the law and to place the voting machines in precincts in which the voters were registered, resulting in a deprivation of the right to vote in the precinct in which the voter is registered."
The court noted there was proof of other precincts with polling places located outside the precinct boundaries, but those were not put at issue by the parties. Accordingly he rendered judgment solely on the basis of the illegal polling place of Ward 7, Precinct 6. His judgment did not void the election, but he ordered that another election, with adequate notice, be held only in Ward 7, Precinct 6 at a poll within the Precinct boundaries, the results of that election to be added to the already tabulated votes of the candidates to determine the winner.
At the outset we must say that the new election code of Louisiana contains provisions regulating the court's determination of election contests. R.S. 18:1431 through 1434. Generally speaking, this enactment by the legislature provides us with the *362 guidelines governing our inquiry into the case, and the result to be reached upon a final determination by the court. We note that the result ordered by the trial court is not among the remedies afforded. The parties both argue that Section 1431, concerning fraudulent or illegal votes is not applicable, and indeed there is no issue of fraud whatsoever raised in this case. The issues presented come under the provisions of Section 1432 which provides only for a declaration that the entire election be voided.
It is apparent that the plaintiff in this suit is required to prove either that 1.) it is impossible to determine the result of the election, or 2.) the number of qualified voters who were denied the right to vote by the election officials was sufficient to change the result in the election, if they had been allowed to vote. We conclude that his proof is insufficient in either case.
It is conceded that the polling place in question was outside the precinct boundaries in violation of R.S. 18:533 B. But what is the effect on the results of this election? Neither of the parties had anything to do with its change or location, which is solely within the responsibility of the governing authority. § 533 A. As we consider the evidence, the main problem that arose here is the lateness of the change from one location to another. § 534 and § 535 regulate the change of polling places and require publication. Some two weeks before the election the change was made but no publication appeared until the afternoon before the election, when the Board of Election Supervisors published an official list of polling places in its official journal, The New Orleans-States Item. The only other notice was a list published by the Times Picayune newspaper as a news item on the morning of the election.
Under these circumstances, we do not consider that the votes cast in that precinct should be disregarded and not counted because cast at an illegal voting place. See § 531 A. We quote from the case of Johnson v. Sewerage District # 2 of Parish of Caddo, 239 La. 841, 120 So.2d 262 (La.1960) at page 271:
"It has frequently been observed by us that in the absence of fraud, corruption or proof that the irregularities complained of would have changed the result of the election, the election will not be set aside solely because of the failure of some ministerial officer to perform every formal direction prescribed by law. Duncan v. Vernon Parish School Board, 226 La. 379, 76 So.2d 403 (and cases cited therein)."
This principle is still being followed by our courts, and is still applicable law under the new election code.
To overcome this principle of law, plaintiff must show that what happened here created a situation that, in effect, was a denial of the right to vote sufficient to change the result of the election as contemplated in the new election code. As we analyze the facts, the householder at the old polling place on LaHarpe Street put a sign on the premises notifying that there was no voting there that day and that approximately 6:15 A.M. (the polls opened at 6:00 A.M.) added to the sign "New location 1932 Touro St. Rivers Friderichs School". He also testified that later on there were persons directing the voters to the new location. Mr. Charbonnet himself visited the polls shortly after 9 o'clock and requested some of his workers to man the area to notify prospective voters and to furnish transportation to the new polling place.
The main evidence relied upon by plaintiff to show loss of the right to vote were the depositions of 16 people who were registered in the precinct and testified generally that they would have voted at the old location. One of these actually voted, 3 did not go to the old location at all, but heard that it was closed and so did not attempt to vote, 7 knew of the change in location but found it inconvenient to vote there and 5 testified that they went to the old location but were not aware of the change to the new location and so could not vote. It was stipulated that some 8 other witnesses would testify generally to the same effect as these witnesses.
*363 We conclude that this is insufficient to meet the requirements stated in R.S. 18:1432 to declare this election void. With this conclusion, plaintiff is not entitled to the relief he sought, or to the relief afforded by the trial judge, whose judgment we reverse.
In connection with the issue of the 60 votes allegedly uncounted on the vote machines, we agree with the findings of the trial judge and his reasoning on that point, within the application of the law and reasons discussed above.
For the reasons assigned, the judgment appealed from is affirmed insofar as it overrules the exceptions of peremption and/or prescription. The judgment is reversed on the merits, dismissing plaintiff's suit at his costs.
AFFIRMED IN PART, REVERSED IN PART.
LEMMON, Judge, concurs and assigns reasons.
The critical issue in this case is whether the court should afford plaintiff relief, irrespective of the Election Code, because the moving of the polling place so substantially deprived the voters of Precinct 6 of the right to vote that the result of the election may have been different if this right had been fairly accorded to these voters.[1]
Although the diligence of the governing authority left something to be desired in accomplishing the removal of the old polling place requested by the property owner, the record establishes the existence of an emergency shortly before the election. Thereafter, the situation was handled reasonably. A nearby location was secured by a City official who was unaware of the new law requiring the polling place to be located within the precinct. Notice of the change was published in the newspaper on the afternoon before and the morning of the election. A sign was placed at the old polling place, notifying voters of the move and of the location of the new polling place.
Equally important, there was absolutely no suggestion of fraud or purposeful confusion. Nor was there any suggestion of untimely changing of polling places as a way of life in local elections or of any other reason to doubt the motives of the governing authority.
The record justifies the conclusion that this was a fair election in which all voters were fairly accorded the right to vote.
GARSAUD, Judge, concurring.
Although I am in full agreement with the majority opinion, I believe the question of waiver should be addressed.
Appellant argues that under R.S. 18:1434, plaintiff waived any objection to an irregularity. That section states:
"An objection to the qualifications of a voter or to an irregularity in the conduct of the election which, with the exercise of due diligence, could have been raised by a challenge of the voter or objections at the polls to the procedure is deemed waived."
It is the appellant's view that with due diligence, plaintiff could have and should have discovered the change in the location of the polling place for Ward 7, Precinct 6 in the official notice of such change in the States-Item of Friday, March 31, 1978. Had he exercised diligence, the appellant argues, plaintiff would have been aware of the change and could have raised a timely objection as, for example, seeking judicial relief. By failing to do so, under circumstances where it is apparent the person objecting could have done so, an individual waives the objection.
I agree with the appellant that the principle of estoppel underlying R.S. 18:1434 applies, and conclude that plaintiff waived his objection. Plaintiff was in a position to *364 challenge timely the irregularity and chose not to do so. To rule otherwise would be to condone a situation where a candidate, fully apprised as a matter of law of an irregularity, could sit back and wait until the election is over and then register an objection only with regard to those irregularities that the election results show adversely affected him. The election process is for the benefit of the people and not for the exclusive benefit of the candidate. Justice and fairness require that a candidate object to an irregularity quo irregularity, and not after the fact, when it may be used exclusively to his own advantage. Of course, where there is no chance for the candidate to be aware of the irregularity until after the election, this analysis would not obtain. However, the facts in our case indicate an opportunity to object prior to the election.
BAILES, Judge, concurring.
I concur in the result of the majority that the judgment appealed must be reversed. There is no authority within the four corners of the Election Code for the court to order a revote in one precinct save the provision of Section 1433 in an instance of malfunction of a voting machine.
Although the plaintiff does contend there was voting machine malfunction, the proof is clear that the voting machine(s) did not malfunction. The evidence clearly preponderates that voter error accounts for the recording of a larger number of voters entering the machine than the combined total of votes cast.
There is no question whatever that the changing of the voting place for Precinct Six, Ward Seven, voters is an election irregularity, but this irregularity does not vitiate the election.
Under Part II of Chapter 9 of the Election Code, the Code details the only grounds for the Court to void an election. If the reasons or grounds advanced for voiding an election are not contained therein, the Court cannot void the election.
Section 1431 treats questions of fraudulent, illegal votes and uncounted votes. This has no application to this suit.
Section 1432 states:
"The final judgment in an election contest shall declare the election void if: (1) it is impossible to determine the result of election, or (2) the number of qualified voters who were denied the right to vote by the election officials was sufficient to change the result in the election, if they had been allowed to vote, or (3) the number of unqualified voters who were allowed to vote by the election officials was sufficient to change the result of the election if they had not been allowed to vote, or (4) a combination of the factors referred to in (2) and (3) herein would have been sufficient to change the result had they not occurred."
The only possible cause that deserves discussion is,
(2) the number of qualified voters who were denied the right to vote by the election officials was sufficient to change the result in the election, if they had been allowed to vote.
If the voting place change can be construed as a denial of the right to vote to those individuals who stated they went to the former voting place at 1406½ LaHarpe Street, such denial was not by the election officials. The voting place change was made at the demand of the property owner of 1406½ LaHarpe Street by an administrative assistant of the mayor of the City of New Orleans. This administrative assistant is not an election official.
Additionally, I find that the plaintiff candidate waived any objection he had to the irregularity complained of by not protesting or seeking to enjoin the voting place location change. The notice of the change was advertised in time for protest prior to the election.
For these reasons, I find the judgment appealed must be reversed and, accordingly, I concur in the result of the majority.
NOTES
[1] R.S. 18:1405 B provides:

"An action contesting any election involving election to office shall be instituted within five days after the date of the election, and no such contest shall be declared moot because of the performance or nonperformance of a ministerial function, including but not limited to matters relating to the printing of ballots for the general election."
[2] Braden received 7592 votes and Charbonnet 7578. In Ward 7, Pct. 6, the totals were Braden 41, Charbonnet 202, machine counter 245.
[1] It is relatively insignificant that the new polling place was established in another precinct in violation of the Election Code. The statute requiring the location of the polling place within the particular precinct is directory to the governing authority in the sense that the authority has no discretion. However, violation of this directory statute does not automatically void the election, in the absence of showing of fraud or other calculated or unreasonable detriment to the candidate contesting the violation.