363 So.2d 887 (1978)
Devon A. KELLY, Jr.
v.
VILLAGE OF GREENWOOD et al.
No. 61649.
Supreme Court of Louisiana.
September 5, 1978.
James E. Bookter, Bossier City, for defendant-applicant.
David B. Clinkenbeard, Naff, Kennedy, Goodman, Stephens, Donovan & Parnell, Shreveport, for plaintiffs-respondents.
MARCUS, Justice.
Devon A. Kelly, Jr., holder of a retail beer permit and operator of a lounge in Greenwood, Louisiana, instituted this action against the Village of Greenwood, its mayor and aldermen, seeking a judgment declaring void a local option election held on January 3, 1978.
The local option election had been called pursuant to the local option law. La.R.S. 26:581, et seq. A verified voter petition was filed with the Greenwood governing authority on October 11,1977. A resolution of the governing authority ordering the election for January 3,1978, was adopted at a regular meeting held on November 8, 1977. There was no opposition to the date of the election by way of protest, petition for injunction or other court action. The *888 election was held as scheduled, resulting in a vote of approximately two-to-one against each of the four propositions placed on the ballot. Greenwood was voted dry.
Plaintiff's suit was brought under the new election code.[1] As a holder of a retail beer permit and operator of a lounge in Greenwood, plaintiff was clearly a "person in interest."[2] Suit was timely instituted[3] against the proper party defendants.[4] Plaintiff alleged in his petition that the election was not held on a date authorized by the election code and that, except for this irregularity in the conduct of the election, the result would have been different. Basically, defendants' position was that the new election code did not apply to a local option election called prior to its effective date. Rather, the instant local option election was governed by La.R.S. 26:581, et seq., with which there was substantial compliance. Finding that plaintiff presented no evidence that the result of the election would have been different had the election been held on an authorized date, the district judge rendered judgment in favor of defendants, dismissing plaintiff's suit at his cost. Plaintiff appealed.
The court of appeal reversed the judgment of the district court finding that the new election code repealed only those sections of the local option election law where in conflict. Therefore, since the verified petition was filed with the Greenwood governing authority on October 11, 1977, the governing authority could have adopted an ordinance or resolution at a regular meeting as late as November 24,1977, fixing the date of the election for Saturday, January 21, 1978. This would have complied with La.R.S. 26:586[5] and La.R.S. 18:402F.[6] *889 Moreover, the Greenwood governing authority had sufficient notice before January 1, 1978, to comply with the requirement of the election code if any part of the election process were to occur on or after January 1, 1978.[7] Therefore, since the local option election was held on January 3, 1978, and not on Saturday, January 21, 1978, as authorized by La.R.S. 18:402F, the election was void and of no effect.[8] Upon defendants' application, we granted certiorari to review the correctness of this decision.[9] First, we agree with the court of appeal that the new election code repealed the local option election law only where in conflict and that the Greenwood governing authority erred in not fixing the date for the election for Saturday, January 21,1978, in compliance with La.R.S. 18:402F. Having reached this conclusion, we are faced with the issue of whether the mere failure to hold the local option election on a date authorized by La.R.S. 18:402F constitutes a cause to declare the election void. We think not.
La.R.S. 18:1401C provides:
A person in interest may bring an action contesting any election in which any proposition is submitted to the voters if he alleges that except for irregularities or fraud in the conduct of an election the result would have been different.
In order to successfully contest an election, the challenger must not only allege that, except for irregularities or fraud in the conduct of the election, the result would have been different, but must prove that the alleged irregularity or fraud resulted in one or more of the causes for declaring an election void under La.R.S. 18:1432, which provides:
The final judgment in an election contest shall declare the election void if: (1) it is impossible to determine the result of election, or (2) the number of qualified voters who were denied the right to vote by the election officials was sufficient to change the result in the election, if they had been allowed to vote, or (3) the number of unqualified voters who were allowed to vote by the election officials was sufficient to change the result of the election if they had not been allowed to vote, or (4) a combination of the factors referred to in (2) and (3) herein would have been sufficient to change the result had they not occurred.
See Charbonnet v. Braden, 358 So.2d 360 (La.App. 4th Cir. 1978), writ denied, 357 So.2d 560 (La.1978). This statutory scheme is in accord with pre-election-code jurisprudence on the issue. See Moreau v. Tonry, 339 So.2d 3 (La.1976), appeal dismissed, 430 U.S. 925, 97 S.Ct. 1541, 51 L.Ed.2d 769 (1977); Garrison v. Connick, 291 So.2d 778 (La.1974); Dowling v. Orleans Parish Democratic Comm., 235 La. 62, 102 So.2d 755 (1958); Lewis v. Democratic Executive Comm., 232 La. 732, 95 So.2d 292 (1957); Felder v. Police Jury of Livingston Parish, 207 La. 550, 21 So.2d 724 (1945); Landry v. Ozenne, 194 La. 853, 195 So. 14 (1940); Lafargue v. Galloway, 184 La. 707, 167 So. 197 (1936); Womack v. Nettles, 155 La. 359, 99 So. 290 (1924).
In the instant case, plaintiff does not contend, nor do we find, that it is impossible to determine the result of the election, the first cause for declaring an election void under La.R.S. 18:1432. Nor do we find that plaintiff has shown the existence of the second, third or fourth cause for declaring an election void under that statute. As the district judge correctly noted in his reasons for judgment, plaintiff *890 presented no evidence to show that the result of the election would have been different had the election been held on a date authorized by La.R.S. 18:402F. We do not consider that the irregularity is of such a serious nature as to deprive the voters of the free expression of their will. Accordingly, we conclude that the court of appeal erred in declaring the local option election void and of no effect.

DECREE
For the reasons assigned, the judgment of the court of appeal is reversed and the judgment of the district court, rejecting plaintiff's demands, is reinstated. All costs of these proceedings are assessed against plaintiff.
TATE, J., concurs and will assign reasons.
DIXON, J., dissents with reasons.
CALOGERO, J., dissents for reasons assigned by DIXON, J.
TATE, Justice, concurring.
I agree with the majority opinion that the new election code governs local option elections and that, accordingly, this election should have and could have been held upon one of the dates specified by La.R.S. 18:402(F) (1977) as mandatory for special elections. I likewise agree with my dissenting brethren (and with the court of appeal) that a timely post-election attack upon a local-option election held on an unauthorized date will invalidate the election, without any necessity for the plaintiff to prove that the result of the election was different because of the defective date:
The absence of legislative authorization to hold the election on that date completely invalidates the election. The election, being void as unauthorized by law, the defect is not a mere irregularity under La.R.S. 18:1401(C), for which invalidation of the election is permitted only for the causes shown by La.R.S. 18:1432in substance, that the result was different because of the irregularity, or that it was impossible to determine what the result of the election would have been had the irregularity not occurred.
Nevertheless, under the present facts, the election was held in substantial compliance with the laws governing local-option laws, and the difference in date is in the nature of an irregularity, which (not having been contested prior to the election) cannot be availed of by a post-election attack after the opponent has been defeated by a vote of the people. At the time the election was called on November 8, 1977, under the only statute then applicable (La.R.S. 26:586) the date of the election (January 3, 1978) was permissible.
The provisions of Act 545 of 1977, supplementing the election law, did not become effective until January 1,1978. Included in the act were the provisions of La.R.S. 18:402(F); in an effort to minimize special elections this enactment provided special elections to be held only on five specified dates each year. Although this statute had already been enacted earlier in 1977, it was not in effect at the time the ordinance calling the local-option election was adopted.
A provision in the 1976 code (Act 697 of 1976, Section 4), it is true, directed election administrators to take action so that the election could become fully operative on its effective date of January 1, 1978. This was, however, in the nature of a directory admonition, without invalidating consequence for its disregard, as contrasted with an imperative and mandatory provision of obligatory force. The new election code, under its terms not effective until January 1, 1978, cannot in my opinion, be held to have invalidated the action of the governing authority in November, 1977, in calling the election for a date then authorized by law.
Accordingly, for these reasons I concur with the majority's determination that the election cannot be invalidated because of the attack after the election on the date for which it was called, a valid date for the election at the time of its calling.
*891 DIXON, Justice (dissenting).
I respectfully dissent.
The ready answer to the majority opinion is that, except for the irregularity in holding the election on a day not permitted by law, the result would have been different: no election, no prohibition. Further, it is clear that La.R.S. 18:1432 is not intended to be the exclusive remedy available in all suits which seek to nullify elections.
In Police Jury of Tangipahoa v. Town of Pontchatoula, 118 La. 138, 42 So. 725 (1907), the police jury was petitioned to hold a local option election and passed an ordinance fixing the date for the election. Thereafter the police jury took no action and its president chose the place of election, the hours of voting and the ballot form. This lack of action on the part of the parish authorities rendered the election void without the challenger's being required to come forward with proof that the result would have differed if the police jury had selected the polling places rather than its president. The court apparently viewed the police jury inaction as constituting a deficiency more serious than a mere irregularity: "[W]e are of opinion that defendant is well founded in saying that no election has been held in the ward." 118 La. at 140, 42 So. at 726.
Judicial recognition of a category of election deficiencies graver than mere irregularities was recognized in Felder v. Police Jury of Livingston Parish, 207 La. 550, 21 So.2d 724 (1945). The contestants alleged that the election petition did not contain the signatures of the requisite percentage of qualified voters and that the election commissioners had been appointed beforehand by conspiracy. The district court dismissed the suit on defendant's exception of no cause and no right of action, but the Supreme Court reversed and held inapplicable the rule requiring one who contests an election for irregularities to demonstrate how they affect the outcome:
"There is an array of decisions in our jurisprudence holding that in an election contest the contestant must not only allege specific irregularities in the conduct of an election, but must also allege and show that, but for the occurrence of such irregularities the results of the election would have been different . . . However, in the instant case the plaintiffs are contending that the calling of this election by the Police Jury was unauthorized and that the election itself was illegally held." 207 La. at 555-56, 21 So.2d at 726.
This classification of elections into those which are only irregular and those which are illegal is useful for analyzing the present controversy. In some situations, a failure to comply with provisions of the law will result only in irregularity, and the contestant must prove that the deviation complained of caused a change in the election results. La.R.S. 18:1401C. Other deviations from the election law may render an election illegal, and the contestant should not be required to prove the likelihood of a different result because "no election has been held." Police Jury of Tangipahoa v. Town of Pontchatoula, 118 La. at 140, 42 So. at 726. Requiring the contestant to demonstrate a different result absent the alleged deviation is theoretically unsound, giving presumptive validity to a nullity. Indeed, this second sort of contest is more akin to a declaration of nullity than to an election suit. Accordingly, the absence of reference in La.R.S. 18:1401C and 18:1432 to the availability of such an action is explained by the specific subject matter of the Election Code and the general nature of the declaration of nullity.
Although no Louisiana decision has dealt squarely with the question at hand, a perusal of other jurisdictions reveals a consistent stance on the issue. In most American jurisdictions the failure to comply with a statute establishing the time and place for elections is not regarded as a mere irregularity, Gray v. Reorganized School District R-4 of Oregon County, 356 S.W.2d 55 (Mo.1962), and the holding of an election at the time and place provided by law is deemed essential to its validity. Smiley v. Gaskin, 115 Ga.App. 547, 154 S.E.2d 740 (1967); Davis v. Page, 217 Ga. 751, 125 S.E.2d 60 (1962); Gann v. Harrisburg Community *892 Unit School District, 73 Ill.App.2d 103, 218 N.E.2d 833 (1966). Moreover, statutes specifying the date for holding an election are ordinarily regarded as mandatory rather than directive. Kinney v. House, 243 Ala. 393, 10 So.2d 167 (1942); Cali v. City of Philadelphia, 406 Pa. 290, 177 A.2d 824 (1962); Clark v. Stubbs, 131 S.W.2d 663 (Tex.Civ.App.1939). Elections held on dates other than those fixed by the legislature are considered void unless held on a different date pursuant to a valid court order. Smiley v. Gaskin, supra; Corey v. Hardison, 236 N.C. 147, 72 S.E.2d 416 (1952); State ex rel. Woofter v. Town of Clay, 149 W.Va. 588, 142 S.E.2d 771 (1965).
La.R.S. 18:402F(5) states that certain elections, including local option elections, shall be held "the third Saturday in January of any year . . ."In discussing this and related provisions, the Court of Appeal referred to the legislative purpose behind their enactment:
". . . We note that these are Saturday and not weekday dates and that further legislative purpose may be reasonably deduced to be the avoidance of the expense of multiplicity and frequency of elections which possibly create voter apathy. We also observe that the obvious intention of the Legislature is to avoid, if at all possible, even those elections held under special laws from being called on a date other than the dates specified in section 402. . . ." 357 So.2d at 1184 (2d Cir. 1978).
The majority approach undercuts the legislature's decision that fewer elections are better for the body politic. Our opinion, if taken literally, can be said to permit elections to be held whenever election officials choose, unless someone can prove that a different result would have obtained on the correct day.
NOTES
[1] The legislature enacted an election code which became effective on January 1, 1978. La.R.S. 18:1, et seq.
[2] La.R.S. 18:1401C provides in pertinent part:

A person in interest may bring an action contesting any election in which any proposition is submitted to the voters . . . . .
[3] La.R.S. 18:1405D states:

An action contesting an election submitting a proposition to the voters, except a constitutional amendment or a proposition covered by Subsection E of this Section, shall be instituted within thirty days after the official promulgation of the results of the election.
[4] La.R.S. 18:1402 provides in pertinent part:

The following persons are the proper parties against whom actions may be instituted in actions objecting to candidacy and in election contests: . . . (3) the governing authority who called an election submitting a proposition to the voters, other than a proposed amendment to the constitution.
[5] La.R.S. 26:586 provides in pertinent part:

The governing authority with whom the petition is filed by the Registrar of Voters shall attach to the petition its sworn verification showing the day, month and year the petition was filed with it.
If the petition conforms to all the provisions of this Chapter, the governing authority shall order the election. The ordinance or resolution of the governing authority ordering the election shall be adopted at a regular meeting held not less than thirty nor more than forty-five days from the date the petition was filed with the governing authority by the Registrar of Voters.
. . . . .
The date fixed for the election shall be not less than forty-five nor more than sixty days from the date of the adoption of the ordinance or resolution ordering the election.
[6] La.R.S. 18:402F provides:

Bond, tax or other elections. Every bond, tax, or other election at which a proposition or question is to be submitted to the voters shall be held only on one of the following dates:
(1) The last Saturday in October or the sixth Saturday after the last Saturday in October of 1979 and every fourth year thereafter;
(2) The third Saturday in September or the first Tuesday after the first Monday in November of even-numbered years;
(3) The first Saturday in April or the sixth Saturday after the first Saturday in April of any year;
(4) The third Saturday in October or the sixth Saturday after the third Saturday in October of 1981 and every fourth year thereafter;
(5) The third Saturday in January or any year, which, in addition to the other dates as provided for in this Subsection, shall be exclusively for elections on bonds, taxes, and other propositions or questions and for no other kind of election; or
(6) In case of an emergency, upon application to and approval by the State Bond Commission, the governing authority of a parish, of a municipality, or of a parish or city school board may conduct a bond or tax election on a Saturday which is not provided for in this Subsection.
[7] The election code, as originally enacted in 1976 and supplemented in 1977, provides:

Section 4. The provisions of this code shall become effective on January 1, 1978; however, all election officials and public employees who under the constitution and the provisions of this code are charged with administering the election laws or performing any duties or functions relating thereto shall, on and after this Act is finally enacted into law, take such immediate action as is necessary in order that the provisions of this code shall become fully operative on and after the effective date hereinabove fixed. Section 4, Act 697 of 1976.
[8] 357 So.2d 1182 (La.App.2d Cir. 1978).
[9] 358 So.2d 949 (La.1978).