JONES, Judge.
These are consolidated cases contesting an election result wherein the petitioners failed to win the election outright or to qualify for a position in the run-off election. At the conclusion of plaintiff’s case, the trial court granted directed verdicts for all defendants. We affirm.[1]
Petitioners Yvonne L. Hughes (Hughes) and Shyrl Patterson Bagneris (Bagneris) qualified as candidates for Judge, Criminal District Court, Section “I”, Parish of Orleans. *584 The election was held on October 16, 1993. Petitioner Hughes placed third and petitioner Bagneris placed fourth as evidenced by the election results. Each candidate filed a petition to contest the election and trial of both suits was subsequently consolidated. The petitioners alleged, inter alia, that voting machines were not timely in place for the electorate to vote on election day, thus depriving the electorate of their right to vote for the candidate of their choice; that on election day voting precincts were changed in violation of state law, also depriving the electorate of the right to vote for the candidate of their choice; that new computerized voting machines were used in this election for the first time and that the electorate was not timely educated in their use. Petitioners sought an order annulling and setting aside the election results, an order staying the runoff election scheduled for November 13,1993, and a judgment granting attorney’s fees, costs, and all equitable relief. Additionally, Petitioner Bagneris sought a Temporary Restraining Order enjoining the defendants from “certifying the votes cast on October 16, 1993.”
Made defendants in the Hughes suit were Edwin Lombard (Lombard), in his capacity as the Clerk of the Criminal District Court for the Parish of Orleans; Jerry Fowler (Fowler), in his capacity as Louisiana Commissioner of Elections; Fox McKeithen (McKeithen), in his capacity as Secretary of State, the Orleans Parish Board of Election Supervisors, and the City of New Orleans (the City). The City filed an Exception of No Cause of Action, arguing that the election was a state election for a state office called by the governor, and that the remedy sought by petitioners was beyond the relief the City could provide should petitioners prevail on the main demand.
Petitioners also filed motions alleging that Judge Katz of Division “B” of the Civil District Court should be recused because the wife of the defendant Lombard is an employee in the court of Judge Katz and that the case should be transferred to Judge Bernette Joshua Johnson of Division “I” of the Civil District Court. Although the record is silent as to the action of the trial court, all parties agree that these motions were denied by the trial court.
The case was timely tried before Judge Katz. At the conclusion of petitioner’s case, each defendant moved for directed verdicts of dismissal, arguing that petitioners had failed to meet their burden of proof that the election results were adversely impacted by the conduct of the defendants. The motions for directed verdicts were granted and petitioners timely perfected appeals of the adverse judgment.
Prior to ruling on the issues raised in the appeal, the court must rule on the defendant’s motion to strike exhibits and/or attachments which the petitioner, Hughes attached to her brief. Said exhibits consist of a Notice Of Deposition which was filed into the record, but which was admittedly never served on the Commissioner of Election nor the Board of Election Supervisors nor the Secretary of State; a deposition taken on October 27, 1993 of the sole witness who testified at the trial held on October 29,1993; and a document entitled “Proposed stipulations of fact”. Neither the deposition or proposed stipulations were introduced at the trial of the case. For this reason, neither document can be considered as a part of the record of this case. Thus the defendant’s motion to strike is granted insofar as it relates to those two documents. The Notice of Deposition is already included as an official part of the record. For this reason, the defendants’ motion to strike this document as an exhibit is denied.
On appeal, both petitioners argue that the trial judge erred in granting the defendants’ motions for directed verdicts. Petitioner Hughes also raises two additional assignments of error. More specifically she argues that the trial court erred in refusing to compel defendant Fowler to produce the documents specified in her notice of deposition and the trial court erred in granting the City’s peremptory exception of no cause of action.
The first issue to be addressed in this expedited appeal is whether the trial court erred when it granted the City’s exception of no cause of action.
*585 The sole allegation contained against the City of New Orleans in this litigation was that several of the polling places were changed in violation of state law. In response to this allegation, the City maintained that Hughes was seeking a state office and that Hughes had not prayed for any remedy which could be granted against the City. For this reason, the City maintained that Hughes had not stated a valid cause of action against them. Hughes argues that pursuant to the provisions of La.R.S. 18:533-18:534 and 18:537 the City is the governing authority charged with the responsibility of establishing and changing polling places. Further, Hughes argues that the City was the only party against whom attorneys’ fees and costs may be assessed pursuant to La.R.S. 18:537. Thus, Hughes argues the City was a proper party to the proceedings. We agree. In her prayer for relief, petitioner prayed for all equitable relief. If in fact the petitioner could prove that the polling places were illegally moved and that the changes caused a denial or abridgement of the right to vote on account of race or color, a cause of action would exist against the City. However, a review of the record reveals that the petitioner made no such showing at the trial of the matter. Thus, the granting of the motion to dismiss the City does not constitute reversible error.
The second issue to be addressed in this appeal is whether the trial court erred by refusing to compel the defendant Fowler to comply with the request to produce documents contained in Hughes’ notice of deposition. Defendant Fowler denies being served with a copy of the notice of deposition. Because the record contains no evidence to support a finding that this notice of deposition was ever served on the defendant, we pretermit any discussion of whether the notice of deposition was the proper discovery device to utilize to obtain documents. It is obvious that no basis existed to compel the defendant to comply with a request to produce documents if he was not served with such a request.
The final issue to be addressed in this appeal is whether the trial court erred in granting the defendants’ request for a directed verdict at the conclusion of the petitioners’ case.
At the conclusion of the petitioners’ case, the trial court granted the defendants’ motion for a directed verdict. Appellants argue that the trial court erred in granting the motion for a directed verdict because such a motion is not an appropriate vehicle for disposing of a case in a non-jury trial. We agree. However, pursuant to Article 1672(B) of the Louisiana Code of Civil Procedure the trial court clearly had the authority to grant involuntary dismissals. Lawyers and judges frequently use the terms directed verdicts and involuntary dismissal interchangeably. However, the former applies only to jury trials and the latter to non-jury trials. Having reviewed the record in its entirety, including the exhibits and testimony presented, we find no error on the part of the trial court in dismissing the petitioners’ claims since the granting of an involuntary dismissal was warranted in this case.
Petitioners case consists solely of exhibits and the testimony of one witness, Mr. Joseph Broussard, Jr., Deputy Clerk for the Criminal District Court in charge of elections. A summary of the evidence adduced at the hearing is contained in the following excerpt from the findings of fact made by the trial judge:
... In the case under consideration today, the election returns in evidence show that Bigelow was the first place finisher in the primary; he had 13,602 votes. The second place finisher was Tervalon with 11,050 votes. The third place finisher is one of the plaintiffs, Ms. Hughes, who had 7,072 votes. And the fourth place finisher is the other plaintiff, Ms. Bagneris, who had 5,209 votes.
The evidence does show that there were approximately 18 polling places that were changed. That there were 128 polling places that did not have machines up and running at 6:00 A.M. Of those 128 polling places, approximately 74 of them were in majority black precincts and 54 of them were in majority white precincts.
The testimony also shows that the overall turnout in the election was 17.8 percent of *586 the eligible registered voters. But in those 128 precincts, the average turnout was 17.7 percent, or a difference of one-tenth of a percent.
The explanation for the tardiness or the delivery of the voting machines was explained by. the evidence, and it was the drayage company. And that there was no showing of any pattern or conduct intended to deprive anyone of their right to vote or to prefer one candidate over another candidate, or one of the propositions over the other proposition involved.
Also, in those approximately 18 polling places that were changed, there was no showing that they were done to cause any inconvenience or to retard the ability of the voters to vote or to favor one candidate over another candidate.
Petitioners argue that the provisions of La.R.S. 18:1482 provided a basis for the trial court to nullify the results of the election and order a new election. The provisions of that section of the Election Code provides:
A. If the trial judge in an action contesting an election determines that: (1) it is impossible to determine the result of election or (2) the number of qualified voters who were denied the right to vote by the election officials was sufficient to change the result in the election, if they had been allowed to vote, or (3) the number of unqualified voters who were allowed to vote by the election officials was sufficient to change the result of the election if they had not been allowed to vote, or (4) a combination of the factors referred to in (2) and (3) herein would have been sufficient to change the results had they not occurred, the judge may render a judgment declaring the election void and ordering a new primary or general election for all the candidates, or, if the judge determines that the appropriate remedy is the calling of a restricted election, the judge may render a final judgment ordering a new election and specifying the date of the election, the appropriate candidates for the election, and the office or other position for which the election shall be held.
Additionally the petitioners argued that pursuant to the jurisprudence as expressed in Moreau v. Tonry, 339 So.2d 3 (La.1976), cert den. 430 U.S. 925, 97 S.Ct. 1541, 51 L.Ed.2d 769 (1977) and Garrison v. Connick, 291 So.2d 778 (La.1974), a candidate who cannot prove that he or she would have been elected but for irregularities or fraud should still prevail if the Court finds the proven fraud and irregularities are of such a serious nature that the voters have been deprived of the free expression of their will, the election will be nullified.
The trial court however specifically found that the petitioners did not meet their burden of proof required under the statute or the jurisprudence. In his reasons for judgment the trial judge concluded that:
... there has been no showing by the plaintiffs, either that but for these irregularities that they would have made it to the runoff. Nor does the evidence support that these irregularities constitute the type of fraudulent or irregularities that are designed to deprive the voters of their free expression of their will under that alternative standard enunciated by the Supreme Court in the Garrison vs. Connick case and Moreau vs. Tonry case.
Therefore, the Court finds that the plaintiffs have failed to carry their burden of proof by showing either that but for these irregularities that they would have made it to the runoffior that these irregularities constituted such irregularities of such a serious nature as to deprive the voters of their free expression of will.
In reviewing the record, we specifically note that the petitioners did not introduce or present the deposition, affidavit, or testimony of any citizen who was unable to vote because of the alleged changes in polling places or because of the late arrival of the voting machines. Thus the petitioners failed to prove that anyone was denied the right to vote by the election officials. Finding no error in the trial court’s findings of fact or law, we affirm the judgment of the trial court.

AFFIRMED.

BARRY, J., concurs with written reasons, and is joined by WALTZER, J.
BYRNES, J., dissents with reasons.

. In the interest of expediting the matter the court, on November 5, 1993, issued a per curiam decree affirming Ae judgment of the trial court.