339 So.2d 3 (1976)
James A. MOREAU
v.
Richard A. TONRY et al.
Nos. 58791, 58792.
Supreme Court of Louisiana.
October 22, 1976.
*4 T. M. McBride, III, Chalmette, Martzell & Montero, John R. Martzell, New Orleans, for plaintiff-applicant.
Gilbert V. Andry, III, Sidney Provensal, Jr., New Orleans, Luke A. Petrovich, Buras, Gibson Tucker, Jr., New Orleans, for defendants-respondents.
DIXON, Justice.
In this election contest the Court of Appeal reversed the district court and annulled the election, vacating the certification of defendant Tonry, the Democratic nominee for Congress, leaving the nominee to be named by the appropriate Democratic Committee.
The factual findings to support the action of the Court of Appeal are: forty-three forged signatures on the precinct register and three hundred fifteen more votes cast on the voting machines than signatures on the precinct registers (out of a total of almost one hundred thousand votes). (The trial court had discounted the effect of such "irregularities" because, among other reasons, it found only minimal differences between the number of voters on the poll lists and the number of votes cast on the machines). The Court of Appeal found that "no inference can be made that these illegal votes were cast for Tonry."
Nothing has been proved to us to compel a different conclusion.
The statutory rule in Louisiana is that an election may be upset only if the one contesting the election can show that "but for irregularities or fraud he would have been nominated . . ." (R.S. 18:364(B)).
The plaintiff Moreau argues that if the number of "irregularities" exceed the difference between the candidates, the outcome of the election cannot be determined. This has never been the law. If the candidate cannot prove he would have been elected "but for irregularities or fraud," our jurisprudence refers to an alternative: if the court finds the proven frauds and irregularities are of such a serious nature that the voters have been deprived of the free expression of their will, the election will be nullified.
". . . For this Court to render such a drastic order, there must be a clear showing that a course of fraudulent conduct was employed which effectually prevented the electors from expressing their will." Lewis v. Democratic Executive Committee, 232 La. 732, 95 So.2d 292 (1957).
No case has been called to our attention (and we know of none) where an election has been upset because of serious and pervasive irregularities when the evidence falls short of proving that "but for" the irregularities, the one contesting the election would have won.
The solution adopted by the Court of Appeal is innovative, and not necessarily productive of fair elections. The candidates are removed from the reach of the lawful election machinery, even though neither has been found responsible for fraud and irregularity, and neither can be held the winner "but for" the irregular votes. As stated in Landry v. Ozenne, 194 La. 853, 195 So. 14 (1940):
". . . If this were permitted it is easy to see that in every case in which a candidate was defeated by a small margin of the votes, two elections would inevitably be heldone at the polls and the other in the courts. . . ." 195 So. 14, 23.
*5 Law is derived from human experience over a long enough time to give validity to that experience. Fraud and illegality in elections are not to be condoned. However, we find it significant that in the long history of election contests in this State, although recognizing that there might be an election which should be upset for widespread fraud which cannot be proved to supply the winning margin, this court has consistently disallowed an election contest where the claims are similar to those of this plaintiff. See Lewis v. Democratic Executive Committee, supra.
The irregularities found by the Court of Appeal are not so pervasive that the election must be nullified.
Therefore, the judgment of the Court of Appeal is reversed, and the judgment of the district court, dismissing plaintiff's suit, is reinstated; the stay order previously issued in this case is hereby annulled and recalled.
SANDERS, C. J., dissents and assigns written reasons.
SUMMERS, J., dissents and assigns reasons.
SUMMERS, Justice (dissenting).
I subscribe to the opinion of the Court of Appeal, 338 So.2d 791. On the facts found by that court the judgment nullifying the election is correct. Without setting forth why, this Court holds that the irregularities found by the Court of Appeal are not so pervasive that the election must be nullified. The carefully drawn unanimous opinion of the Court of Appeal refutes this conclusion in a nine-judge review. As Justice Dixon said on another occasion, these facts demonstrate
"This Court can and should annul elections when the irregularity or illegality permeates the entire election, or when there is an irregularity which makes it impossible to determine which candidate the people lawfully elected." (emphasis added). LaCaze v. Johnson, 310 So.2d 86 (La.1974)
Under the facts of this case, that principle is abrogated. This Court's opinion leaves open a situation in which widespread practices of fraud and irregularities provide no remedy unless the candidate can show that the practice deprives him of the election. Such a ruling under the facts of this case disregards the elaborate statutory procedure for contesting elections and decrees that no remedy is available in a most objectionable situation where the will of the people is in fact frustrated.
I respectfully dissent.
SANDERS, Chief Justice (dissenting).
Election frauds and irregularities are difficult to prove because of their clandestine nature and the limited time available to assemble evidence. Despite the difficulty of legal proof, however, the reviewing judges in both lower courts found frauds and irregularities in the present case.
The applicable rule, reiterated by this Court in several decisions, is as follows:
"[I]f the Court finds the proven frauds and irregularities are of such a serious nature as to deprive the voters of the free expression of their will, it will decree the nullity of the entire election . . ." See Garrison v. Connick, La., 291 So.2d 778 (1974); Dowling v. Orleans Parish Democratic Committee, 235 La. 62, 102 So.2d 755 (1958); Lewis v. Democratic Executive Committee, 232 La. 732, 95 So.2d 292 (1957).
I subscribe to the opinion of the Court of Appeal that the present case falls within the rule. See, La.App., 338 So.2d 791 (1976). As found by the Court of Appeal, the frauds and irregularities included forgery, multiple voting, voting in the name of deceased persons, and the voting of persons without supporting precinct registers.
These frauds and irregularities were both systematic and flagrant. They infected far more votes than the vote margin between the two competing candidates. This means that the voters have been deprived of the free expression of their will, because the outcome of the election cannot be determined.
As the Court of Appeal aptly stated:

*6 "These fraudulent practices cannot be condoned under any circumstances and must be ferreted out if we are to insure that the free and honest expression of the will of the electorate is reflected in the democratic process."
For the reasons assigned, I respectfully dissent.