728 So.2d 428 (1998)
Roosevelt SAVAGE, Plaintiff-Appellee,
v.
Billy EDWARDS, et al., Defendant-Appellant.
No. 98-1762.
Court of Appeal of Louisiana, Third Circuit.
November 23, 1998.
Writ Granted December 9, 1998.
*429 Edward Larvadain, Jr., Alexandria, for Roosevelt Savage.
Peggy Dean St. John, Alexandria, for Billy Edwards, Etc.
Harry James Lossin, Sr., Jonesville, for Janet T. Payne.
Angie Rogers LaPlace, Baton Rouge, for Sue Manning.
Celia R. Cangelosi, Baton Rouge, for Jerry M. Fowler.
Sheri M. Morris, Baton Rouge, for W. Fox McKeithen.
BEFORE: YELVERTON, COOKS, SAUNDERS, AMY, and PICKETT, JJ.
YELVERTON, Judge.
This is an election contest suit. The plaintiff-appellee, Roosevelt Savage, filed suit to have the November 3, 1998 general election for mayor of the town of Jonesville declared null and void. From a ruling of the trial court declaring the election void and ordering a new general election, the defendant, William F. "Billy" Edwards, appeals.
In the run-off election on November 3, 1530 votes were cast. The official election returns revealed that Edwards received 802 votes (including 269 absentee votes) while Savage received 728 votes (including 149 absentee votes). The margin of victory for Edwards was 74 votes. On November 10, 1998, Savage filed a petition naming the following defendants: Edwards; Janet T. Payne, Clerk of Court, Catahoula Parish; Sue D. Manning, Registrar of Voters, Catahoula Parish; Fox McKeithen, Secretary of State of Louisiana; and Jerry M. Fowler, Louisiana Commissioner of Elections. In the petition, Savage alleged irregularities concerning absentee ballot requests, unqualified voters permitted to vote in the election, vote buying, and intimidation of voters. He further alleged that except for substantial irregularities of error, fraud, and other unlawful activities in the conduct of the election, he would have been elected Mayor. On November 12, 1998, Savage filed an amending petition alleging that an additional 40 people who did not live in Jonesville were permitted to vote.
Exceptions of no cause of action were filed on behalf of Janet Payne and Sue Manning and these were granted by the trial court. An exception of no cause of action filed on behalf of Fox McKeithen and Jerry M. Fowler was taken under advisement and denied after a trial on the merits. Edwards filed an answer and alternatively a reconventional demand, seeking damages, costs, and attorney's fees for the plaintiff's filing of the suit. With regard to the original petition, Edwards filed a motion for judgment on the pleadings or alternatively an exception of no cause of action. *430 These motions were denied after a trial on the merits.
Trial on the merits began on November 13, 1998. Finding that it was impossible to determine the result of the election, the trial court rendered judgment on November 15, 1998 declaring the election null and void, and ordering that a new election be held on December 5, 1998. The trial court ordered that the named 23 individuals be stricken from the registrar's voting list. Edwards timely appealed from this judgment.
The primary issue raised on appeal is whether the trial court erred in finding it impossible to determine the results of the election, thereby declaring the election null and void.
The pertinent statutes concerning this issue are La. R.S. 18:1431, and La.R.S. 18:1432. These revised statutes state as follows:

1431. Fraudulent or illegal vote; uncounted votes; determination of election result
When the court finds that one or more of the votes case in a contested election are illegal or fraudulent, the judge shall subtract such vote or votes from the total votes cast for the candidate who received them if the contest involves election to office, or from the total vote for or against a proposition, if the contest involves election to office, or from the total vote for or against a proposition, if the contest is of an election upon a proposition. If the court determines that legal votes cast in the election were excluded in the total votes cast on a candidate or proposition, then these excluded legal votes shall be added to the total votes on the candidate or the proposition to which they are attributable. Thereafter, and after considering all the evidence, the court shall determine the result of the election.

1432. Remedies
A. If the trial judge in an action contesting an election determines that:(1) it is impossible to determine the result of election, or (2) the number of qualified voters who were denied the right to vote by the election officials was sufficient to change the result in the election, if they had been allowed to vote, or (3) the number of unqualified voters who were allowed to vote by the election officials was sufficient to change the result of the election if they had not been allowed to vote, or (4) a combination of the factors referred to in (2) and (3) herein would have been sufficient to change the result had they not occurred, the judge may render a final judgment declaring the election void and ordering a new primary or general election for all the candidates or if the judge determines that the appropriate remedy is the calling of a restricted election, the judge may render a final judgment ordering a restricted election, specifying the date of the election, the appropriate candidates for the election, the office or other position for which the election shall be held, and indicating which voters will be eligible to vote.
B. If the trial judge determines that an action contesting an election or objecting to candidacy was filed frivolously, he may award all costs of court, plus a reasonable attorney fee, plus damages, to the defendant.
The plaintiffs burden of proof in an election contest was correctly stated in Colvin v. Franklin Parish School Board, 28,718 (La. App. 2 Cir. 2/22/96), 668 So.2d 1310 as follows:
LAW
Contrary to plaintiffs assertion that the election should be declared null and void simply because a large number of ineligible voters were allowed to participate, the Election code provides: when one or more illegal or fraudulent votes are cast in a contested election, such votes should be subtracted from the total votes cast for or against a proposition. Then, after considering all the evidence, the court should determine the result of the election. La. R.S. 18:1432. The Election code states that an election should be declared void only: (1) if it is impossible to determine the result of an election or (2) the number of unqualified voters who were allowed to vote was sufficient to change the result of *431 the election if they had not been allowed to vote. La.R.S. 18:1432.
(1) In an election contest which seeks to have the results of an election declared null and void, the plaintiff bears the burden of proof. The plaintiff's burden is two-fold. The plaintiff must first prove either fraud or irregularities are present. Then the plaintiff must prove that, but for the fraud or irregularities, the outcome of the election would have been different. Huckaby v. Hunter; 427 So.2d 1 (La.App. 2d cir.1983), writ denied, 427 So.2d 1197 (La.1983). In Moreau v. Tonry, 339 So.2d 3 (La.1976), the Louisiana Supreme Court rejected the argument advanced by the plaintiff that if the number of irregularities exceed the difference between the candidates, the outcome of the election cannot be determined. The Moreau court held that an election may only be upset if the one contesting the election can how that, but for irregularities or fraud, the election result would have been different.
In plaintiffs original petition and amending petition, plaintiff listed 81 challenges to individually named voters. Plaintiff listed three nursing home patients whose signatures had been allegedly forged on absentee ballots, the names of 55 voters who allegedly did not live within the city limits of Jonesville, three voters allegedly paid by Linda Curry to vote for Mayor Edwards, and six voters living in a hotel and allegedly not residents of Jonesville. Plaintiff also named 14 voters who were challenged at the polls but permitted to vote in spite of the challenge. At the two day trial, the majority of witnesses testified as to their residency, six witnesses testified as to vote buying, five witnesses testified as to the authenticity of their signature on absentee ballots, and one witness testified that he was intimidated by the chief of police.
The trial court found that nine of the plaintiffs challenges had already been rejected by the Board of Elections Supervisors, and these votes were not counted in the election. The trial court also found that the plaintiff was unsuccessful in his challenge of 51 individuals because of lack of evidence or insufficient evidence to prove the individuals were not qualified to vote. This court has reviewed the record and finds no error in these findings by the trial court.
The trial court did find that 23 voters, due to residency qualification requirements, should not have been allowed to vote in the election. The court also found that two absentee ballots which were counted in the election contained forgeries of the signatures of the absentee voters. Further, the trial court found that nine other absentee ballots rejected by the Board of Election Supervisors that were not counted in the election may have been forgeries. The trial court also determined that 12 individuals engaged in selling their votes on election day and that three individuals participated in vote buying and other illegal activities in this particular election. Not counting the nine possible forgeries, the trial court specifically found that there were 40 votes that should not have been counted in the total of the election votes. Instead of simply striking these as provided in La.R.S. 18:1431, the trial court concluded that there was widespread illegal activities in the election such as vote buying and fraud making it impossible to determine the results of the election. We find that the trial court erred in finding it was impossible to determine the outcome of the election.
In considering the effect of the twelve alleged voters who received compensation for their vote, this court relies on this court's rationale in Davis v. McGlothin, 524 So.2d 1320 (La.App. 3 Cir.1988) writ denied, 525 So.2d 1046 (La.1988). Davis, supra, involved an election suit where the plaintiff alleged in his petition that four voters received or were promised compensation for their vote and that two voters were intimidated by individuals other than election officials. The defendant filed an exception of no cause of action alleging that the number of viable challenges of votes in the petition was insufficient to vary the outcome of the election. In sustaining the exception, the trial court found no authority for the plaintiff to challenge voters on the alleged grounds of receiving compensation or intimidation by individuals other than election officials and struck the names from the plaintiffs challenge list. In affirming *432 the trial court's ruling, this court stated as follows:
Although LSA-R.S. 18:1461(a)(4) and LSA-R.S. 14:119 makes such behavior a crime, we find no authority which allows this court to disqualify these votes in an election. Therefore, these six names were properly stricken from plaintiff's list.
However, even if we were to find that the trial court erred in striking these six votes, this would not have effected the outcome of the election. Pursuant to LSA-R.S. 18:1432 "[i]f the trial judge in an action contesting an election determines that: ... (3) the number of unqualified voters who were allowed to vote by the election officials was sufficient to change the result of the election if they had not been allowed to vote ... the judge may render a final judgment declaring the election void ...". In the present case, if we were to assume as true that plaintiff could prove 33 voters were unqualified to vote in this election, then the final vote count would have resulted in 1802 total qualified votes with McGlothin receiving a majority of 903 votes. Under these facts the result of the election would have remained the same, McGlothin the winner.
We find that the trial court erred in finding that there was pervasive vote buying and fraud in the election sufficient to change the result of the election. First, six individuals testified concerning receiving payment by Linda Curry for their vote for Edwards. These six individuals named six other individuals who allegedly received money for their vote. However, these latter six individuals did not testify. Ms. Curry denied giving money for these votes. Mayor Edwards also denied giving money to Ms. Curry for payment of votes. Three of the individuals who allegedly received compensation and who did not testify, did not vote in the election. Based on this evidence we find that, at best, nine individuals who voted in the election were given compensation for their vote. According to the rationale in Davis, supra, evidence of voters receiving compensation is not a ground to disqualify their votes in the election. For this reason this court finds that the trial court erred in striking the 12 individuals allegedly paid for their vote from the total. Even assuming that these voters were not qualified to vote in the election, this would result in only nine individuals being struck from the number of voters who participated in the election.
The trial court also determined that two absentee ballots should not be counted in the total because of forgeries of the voters' signatures. We agree with the trial court that these two votes should have been stricken from the total number of qualified voters. This court also notes that Annie Farris was not allowed to vote in the election since someone had already tried to vote absentee for her. We therefore add her vote to the Savage total pursuant to La.R.S. 18:1431. The trial court also determined that 23 voters were not qualified to vote in the November 3 election due to residency requirements. The court also noted it appeared that seven to nine other absentee ballots contained forgeries. However, these nine absentee ballots were rejected by the Board of Elections supervisors and not counted in the election. These applications were rejected due to the fact that they were not witnessed or not in proper form. The plaintiff did not present any other evidence as to other forged absentee ballots.
This court finds that 28 votes should have been stricken from the total number of votes cast for Edwards, and that one vote should have been added to the Savage total since the voter was not permitted to vote. See La.R.S. 18:1431.
The plaintiff had the burden of proving that but for the irregularities or fraud, the election result would have been different. In the present case we find that the plaintiff did not meet his burden. The plaintiff had the burden of showing that the number of unqualified voters who were allowed to vote was sufficient to change the result of the election if they had not been allowed to vote. In the present case, we only find that 28 and at best 37, unqualified voters were allowed to vote. We also find that one qualified voter was not allowed to vote. Based on this evidence the trial court should have determined that the result of the election was that Edwards *433 received 774 votes and Savage received 729 votes.
For the above and foregoing reasons, the judgment of the trial court is reversed and set aside. William F. "Billy" Edwards is declared to be elected to the Office of Mayor for the City of Jonesville. This court denies the appellant's request for attorney's fees and court costs for frivolous appeal. Costs of the trial court and of this appeal are assessed equally between the plaintiff-appellee and the defendant-appellant.
REVERSED AND RENDERED.
COOKS, J., dissents and assigns reasons.
AMY, J., dissents and would affirm the trial court.
COOKS, Judge, dissenting:
Today, the majority reverses the trial court's judgment nullifying the election finding the "but for" test mentioned in Moreau v. Tonry, a Supreme Court case, and Davis v. McGlothin, a case rendered by this Circuit, compel such result. Though this finding is unsettling and inconsistent with the jurisprudence when examined in whole, even more disturbing is this Court's holding that "evidence of voters receiving compensation is not a ground to disqualify their votes in the election." It follows logically from this expression, that evidence of voter intimidation, vote hauling violations, vote buying, absentee voting for handicap and elderly voters without their knowledge or consent, listing vacant lots as permanent addresses to overcome the residency requirement, fraudulently obtaining and signing forms requesting absentee ballots, actual ballot forgeries, and direct and open participation in these activities by the mayoral candidate himself, his supporters, wife, and other family members are all acts, punishable either by fines or imprisonment, but they do not serve even in this flagrant case as a ground for nullifying the election of a candidate who aided and abetted the practice. The holding in this latest expression avoids serious discussion of the trial judge's finding that the frauds and irregularities, she deemed proven by plaintiff, sufficiently evidenced a pervasive pattern of misconduct that infected far more votes than the vote margin between Edwards and Savage. The violations in this case, in her considered judgment, were so serious that they deprived the voters in Jonesville of the free expression of their will because the outcome of the election was impossible to determine.
I am convinced the trial judge's decision is correct. As Justice Sanders noted in Moreau "election frauds and irregularities are difficult to prove because of their clandestine nature and the limited time available to assemble evidence." Despite these obvious obstacles, the evidence in this case presents one of those rare instances where:
"This Court can and should annul [the election] when the irregularity or illegality permeates the entire election, or when there is an irregularity which makes it impossible to determine which candidate the people lawfully elected." (Emphasis added). LaCaze v. Johnson, 310 So.2d 86 (La.1974). See also, Garrison v. Connick, 291 So.2d 778 (La.1974).
The majority's application of the "but for" test in this case effectively overrules a long line of cases holding "if the court finds the proven frauds and irregularities are of such a serious nature as to deprive the voters of the free expression of their will, it will decree the nullity of the entire election-even though the contestant might not be able to prove that he would have been [elected] but for such fraud and irregularities." (Emphasis added). Bowling v. Orleans Parish Democratic Committee, 235 La. 62, 102 So.2d 755 (1958); Garrison v. Connick, supra; Lewis v. Democratic Executive Committee, 232 La. 732, 95 So.2d 292 (1957). The "but for" test doggedly followed by this Court in Davis is the general rule. But generalities are not without exceptions. Generally, charges of fraud and irregularities are not sufficient to state a cause of action; and generally as found in Davis allegations of the petition must show a sufficient number of contested votes to change the results of the election or the exception will be maintained. But, the Supreme Court even in Moreau recognized that "there might be an election which should be upset for widespread fraud which cannot be proved to supply the winning margin," though it found such exceptional circumstance *434 did not exist in that case. Our court, as well, in Veuleman v. O'Con, 417 So.2d 131 (La.App. 3 Cir. 1982), favorably quoted and applied the following principles articulated in Moreau:
"If the candidate cannot prove he would have been elected `but for irregularities or fraud,' our jurisprudence refers to an alternative: if the court finds the proven frauds and irregularities are of such a serious nature that the voters have been deprived of the free expression of their will, the election will be nullified."
Recently our brethren on the fifth circuit court of appeal in Valence v. Rosiere, 675 So.2d 1138 (La.App. 5 Cir.1996) vacated a lower court's judgment dismissing an election suit finding the allegations of forgery of ballots, nonresident voting, and illegal assistance of voters by the candidate were sufficient to state a cause of action. Significantly, the court in that case reiterated the well settled exception to the general rule announced by the Supreme Court in Dowling, Garrison, and Moreau.
The record in this case amply supports the trial judge's factual findings. Several witnesses testified that Linda Curry, "Doonie," and Mona Briggs, Edwards' supporters, hauled (between them) at least 150 absentee voters to the polls during the general election. These witnesses confirmed that they saw these workers offer and pay $10 a vote to encourage electorates to vote absentee. At least one of the witnesses stated she saw "Billy Edwards" give cash money to the worker who, in turn, gave her $10 dollars after she voted. Just how many absentee votes were affected by these flagrant violations is, as the trial judge found, impossible to tally and prove with the limited time available to the plaintiff to establish his case. But we know Roosevelt Savage received the majority of the votes actually cast on November 3, 1998. (Edwards received 533 votes at the polls and Savage received 579 votes at the polls). Yet, Edwards prevailed in the overall vote count because he received 269 absentee votes matched against Savage's 149 absentee votes. Twenty-eight percent of the overall votes were cast by absentee voting. This is an extremely high and unusual number of absentee votes. Generally absentee voting mirrors the general election; however in the present case Edwards received over 64% of the absentee votes and less than 50% of the votes at the polls. The frauds and irregularities which the trial judge found occurred in this case were serious, substantial, and flagrant, and were mainly focused on the absentee voting.
I respectfully dissent in this case because experience teaches me that our democratic system cannot survive if we condone such widespread practices. Neither the jurisprudence of this State nor the statutory law require that we do so. La.R.S. 18:1432(A) specifically states "if the trial judge in an action contesting an election determines that: (l) it is impossible to determine the result of [an] election," the judge may void the election and order a new one.