722 So.2d 1004 (1998)
Roosevelt SAVAGE
v.
Billy EDWARDS, Mayor of the Town of Jonesville, Janet T. Payne, Clerk of Court, Parish of Catahoula, Sue D. Manning, Registrar of Voters, Parish of Catahoula, Fox McKeithen, Secretary of State, Jerry M. Fowler, Commissioner of Elections.
No. 98-C-2929
Supreme Court of Louisiana.
December 18, 1998.
Edward Larvadain, for Applicant.
Peggy Dean St. John, Gold, Weems, Bruiser, Sues & Rundell, Alexandria; Sheri Marcus Morris, Celia R. Cangelosi, Baton Rouge, Carey Thompson Jones, Denham Spgs., for Respondent.
PER CURIAM.[*]
We granted certiorari in this election contest case to review a decision of the court of appeal which reversed a trial court ruling declaring the November 3, 1998 general election for mayor of the town of Jonesville, Louisiana void and ordering a new election.
After reviewing the record and considering the arguments of counsel, we conclude that the result reached by the court of appeal was correct; the number of votes proven to have been cast illegally or fraudulently was not sufficient to change the result of the election. La. R.S.18:1431-1432. In addition, we agree with the court of appeal's determination that there was insufficient evidence to support the trial court's finding of pervasive fraud in the conduct of the election. Accordingly, the decision of the court of appeal is affirmed.
*1005 LEMMON, J., concurs and assigns reasons.
JOHNSON and KNOLL, JJ., dissent and assign reasons.
LEMMON, J., Concurring.
While I agree with the result, I disagree with the reasoning of the court of appeal in the present case, as well as with the reasoning of the majority of this court in Moreau v. Tonry, 339 So.2d 3 (La.1976).
In Moreau, the apparent winner had a 184-vote victory margin, but the evidence established, among other irregularities, that there were 616 votes on the machines for which there were no voters' signatures on the precinct registers, prompting Judge Redmann at the intermediate appellate level to observe: "[f]ew candidates indeed could muster the forces that mastered the foulness of [the MoreauTonry] election." 338 So.2d 791, 795 (La.App. 4th Cir.1976). The intermediate court (on which I was then serving) annulled the election, warning that "[i]n future election contests, candidates (and their commissioners) should know that a vote on the machine without a voter's signature in the precinct register (or other lawful support) will not be allowed to decide an election." Id.
Neither should vote buying, forged voting papers or other such foul practices be allowed to decide any election. When the evidence establishes fraudulent practices (especially where the candidate is involved) which are so pervasive that one can reasonably conclude the apparent winner did not have sufficient valid votes to prevail in the election, a new election should be required.
It is difficult to articulate a standard for annulling an election in which widespread election fraud has been proved, but specific fraudulent votes in a number sufficient to cover the winner's margin of victory have not been proved. However, deciding difficult legal issues goes to the very heart of the judicial process.[1] We granted certiorari in the present case to address the issue of the standard to establish and to begin drawing lines on a case-by-case basis.[2] However, since the record does not support a conclusion that the fraud and irregularities are so pervasive as to require nullification of the election, the articulation of an appropriate standard must await another day. I therefore concur in affirming the judgment of the court of appeal.
JOHNSON, J., Dissenting.
I agree with the conclusion reached by the Trial Court in this case. Based on the facts found by that court, the trial judge was correct in declaring the election void and in ordering a new election. In my opinion the Court of Appeal erred. Louisiana Revised Statutes Annotated Section 18:1432(A) provides:
If the trial judge in an action contesting an election determines that: (1) it is impossible to determine the result of election, or (2) the number of qualified voters who were denied the right to vote by the election officials was sufficient to change the result in the election, if they had been allowed to vote, or (3) the number of unqualified voters who were allowed to vote by the election officials was sufficient to change the result of the election if they had not been allowed to vote, or (4) a combination of the factors referred to in (2) and (3) herein would have been sufficient to change the result had they not occurred, the judge may render a final *1006 judgment declaring the election void and ordering a new primary or general election for all the candidates, or, if the judge determines that the appropriate remedy is the calling of a restricted election, the judge may render a final judgment ordering a restricted election, specifying the date of the election, the appropriate candidates for the election, the office or other position for which the election shall be held, and indicating which voters will be eligible to vote. (emphasis added).
Kelly v. Village of Greenwood, 363 So.2d 887, 889 (La.1978) is the only decision rendered by this court since the election code was revised, effective January 1, 1978. In Kelly, we determined that the statutory scheme in La.Rev.Stat. Ann. 18:1432 "is in accord with pre-election code jurisprudence on the issue." This pre-election code jurisprudence provided an alternative for a candidate who could not prove he would have been elected "but for irregularities or fraud." If the court finds the proven frauds and irregularities are of such a serious nature that the voters have been deprived of the free expression of their will, it will decree the nullity of the entire election. Moreau v. Tonry, 339 So.2d 3 (La.1976); Garrison v. Connick, 291 So.2d 778 (La.1974); Dowling v. Orleans Parish Democratic Committee, 235 La. 62, 102 So.2d 755 (La.1958); Lewis v. Democratic Executive Committee, 232 La. 732, 95 So.2d 292 (La.1957).
The election results show Billy Edwards with 802 votes and Roosevelt Savage with 728 votes. Edwards received 533 votes at the polls and 269 absentee votes, while Savage received 579 votes at the polls and 149 absentee votes. The Trial Court found that there was pervasive vote buying and fraud in this election, particularly with regard to absentee voting, and that many votes cast were illegal and fraudulent. The Court also recognized the difficulty in proving fraud and irregularities because of their clandestine nature and the difficulty in assembling evidence in such a short time, and that when fraud and irregularities in an election are systematic and flagrant, they infect far more votes than the vote margin between two candidates. In his petition, Mr. Savage challenged 93 votes in the November 3, 1998 election. After reviewing the evidence presented, the trial court threw out 40 votes due to fraud and irregularity.[1]
*1007 The Trial Court found Mr. Savage was unsuccessful in his challenge of an additional 51 individuals who voted in the November 3, 1998 election because of lack of evidence to prove these individuals were unqualified to vote. In his attempt to obtain the necessary evidence to prove that these individuals were not qualified to vote, Savage issued subpoenas for 36 voters, but at least twelve were returned unserved by the process servers. Mr. Savage proffered these subpoenas with the reasons for no service. Some addresses were vacant lots, some addresses were abandoned and condemned houses, and at some addresses residents informed the process server that the person resided in another town or state. As pointed out by the trial judge, gathering evidence of fraud and irregularities to contest an election is a difficult process to begin with, and it is further hampered by the time constraints within which such an action may be brought. Louisiana Revised Statutes Annotated Section 18:1405(B) requires an action contesting any election be instituted before or on the ninth day after the election. In this case, the election was November 3, 1998 so the suit had to be filed by November 12, 1998. Mr. Savage filed suit on November 10,1998. The trial started on November 13, 1998, and concluded on November 14, 1998. It is virtually impossible to conduct adequate discovery of such clandestine activity in ten days.
The Trial Court found it was impossible to determine the results of this election because of the pervasive fraud and illegal activities particularly during the absentee voting period. The testimony of Mona Briggs, also known as "Flapper", an Edwards supporter showed that she and Linda Curry rode up and down the streets, with Linda yelling out the window to see if anyone wanted to go and vote absentee. Ms. Briggs testified that over a five day period she hauled close to 100 elderly people to the courthouse to vote absentee. She and Ms. Curry hauled these people in Mary Edwards' Ford Explorer and she went in with at least two of the persons and filled in the ballot for them. The trial judge determined that Ms. Briggs and Ms. Curry were not merely hauling voters to the courthouse, they were actually engaged in vote buying and other illegal activities. Because of these activities, the votes of these two women were thrown out and at least 100 absentee votes are suspect. Pursuant to La. Rev.Stat. Ann. 18:1432, the trial judge declared the election void and ordered a new election for December 5,1998.
The Secretary of State argues that La. Rev.Stat. Ann. 18:1432(A)(1) only applies to situations where due to mechanical or electrical failure, act of God, or human error it is impossible to determine the outcome of the election.[2] This contention is implausible since La.Rev.Stat. Ann. 18:1433 provides for a revote when a voting machine malfunctions and the other provisions of La.Rev.Stat. Ann. 18:1432(A) deal with qualified voters being denied the right to vote and unqualified voters being allowed to vote. Implausibility aside, this Court should give direction to the lower courts as to what "impossible to determine the outcome" means. In my opinion, this provision encompasses the jurisprudential alternative enunciated by this Court in Moreau v. Tonry, 339 So.2d 3 (La.1976). A trial judge is not limited to strictly numerical considerations in declaring an election void. The judge can and should consider the nature and pervasiveness of the illegal and fraudulent activities. In the matter at hand, the trial judge's decision declaring the election void and ordering a new election was correct.
*1008 For the aforementioned reasons, I respectfully dissent.
KNOLL, Justice, Dissenting.
In affirming a reversal of the trial court by the court of appeal, the majority totally ignores the provision of La.R.S. 18:1432 that provides: "If the trial judge in an action contesting an election determines that: (1) it is impossible to determine the result of election,... the judge may render a final judgment declaring the election void and ordering a new primary or general election for all the candidates...." The record in this case is undisputed that voter fraud was widely pervasive. The trial court found evidence of: (1) widespread vote buying occurring during absentee voting; (2) illegal and fraudulent voting of absentee ballots; (3) individuals not qualified to vote being permitted to vote; (4) individuals qualified to vote being denied the right to vote; (5) illegal selling of votes on election day; and (6) illegal vote buying on election day. Despite these factual findings, findings accepted by the court of appeal, the majority affirms that a contestant to an election case cannot prevail even though widespread corruption is established unless he or she can show that the numbers were "sufficient to change the result of the election." I cannot accept this rationale as a correct interpretation of the relevant legislation.
If an action contesting an election were that easy to determine, the Legislature would have expressly said so. It did not. Instead, the Legislature precisely anticipated the facts involved in this election contest case and stated: "If the trial judge in an action contesting an election determines that: (1) it is impossible to determine the result of election,... the judge may render a final judgment declaring the election void and ordering a new primary or general election for all the candidates...." La.R.S. 18:1432. To this end, I respectfully disagree with that specific portion of the majority's interpretation of La.R.S. 18:1432 that the contestant must prove that the number of votes cast illegally or fraudulently must be sufficient to change the result of the election. There is no such requirement under our positive law.
The majority's holding is woefully weak and leaves so many important issues unresolved and unanswered. In an election contest case fraught with voter fraud, as was courageously recognized by the trial court in this case, this court should not ignore the mandates of our positive law, as relied upon by the trial court, without full explanation. By allowing this election to stand, despite the pervasive fraud, irregularity, and illegality overwhelmingly found by the trial court, the majority subverts the laws of this state and creates an incentive to foster the kind of practices the Code and our Legislature sought to eliminate.
Accordingly, I would reverse the court of appeal's decision and reinstate the trial court's judgment, finding it is impossible to determine the result of the election, declaring the election void, and ordering a new general election for all the candidates. For these reasons, I respectfully dissent.
NOTES
[*] Calogero, J. not on panel. Rule IV, Part 2, § 3.
[1] I especially disagree with the argument that annulling fraudulent elections, except those in which sufficient fraudulent votes to cover the victory margin can be proved, will "open the floodgates" to contesting numerous elections. A warning by this court that fraud in elections will not be tolerated should reduce fraud and therefore reduce election contests based on fraud. On the other hand, tolerating pervasive election fraud can only encourage more fraud in future elections, although it may discourage election contests.
[2] A general flexible standard would necessarily be applied on a case-by-case basis. For example, direct evidence of a specific number of instances of vote buying, combined with additional direct evidence of extensive other irregularities, may circumstantially raise sufficient inferences of additional vote buying that cannot be proved directly in the brief period for garnering evidence. Obviously, other factors must be considered, such as the victory margin and the total number of votes cast, and the standard would be used sparingly.
[1] The 40 votes thrown out include 23 votes from persons who were ineligible to vote in the mayor's election because they reside outside of the Town of Jonesville, 12 votes from persons who were paid $10 by a supporter of Billy Edwards to vote for Mr. Edwards, two absentee votes that were fraudulently cast by a supporter of Billy Edwards, and the votes of three Edwards supporters who participated in vote buying and other illegal activities concerning this election. Of the 23 nonresident votes, the court found that some of the individuals voted at the polls on election day and other individuals voted absentee and their votes were counted. The individuals who sold their votes for $10 to Edwards supporter Linda Curry, testified that they saw Ms. Curry pay other individuals to vote for Edwards. They also testified that they saw Billy Edwards giving money to Ms. Curry and that they were driven to the Registrar of Voters' Office in a vehicle owned by Mary Edwards, Billy Edwards' wife. One of the two fraudulent absentee ballots was signed by Linda Curry on behalf of Sherwin Cummings. Henry Brown, Jr., Mr. Cummings' brother and an admitted Edwards supporter, testified that Linda Curry instructed him to give her the absentee ballot and he did. The ballot was mailed to Mr. Brown's address, but he testified that Mr. Cummings lived in a nursing home in Jonesville. Ms. Curry testified to signing the ballot for Mr. Cummings and signing an absentee ballot on behalf of another nursing home resident, Mr. Lewis Johnson. Both signed ballots were admitted into evidence along with four other ballots which were rejected by the Board of Election Supervisors for Catahoula Parish. The Trial Court noted that one does not have to be a handwriting expert to identify two of the alleged signatures as being written by the same person and three of the other signatures as being written by another person. Linda Curry also admitted that she obtained and signed at least four other applications for absentee ballots, exactly where these ballots went and whether or not they were voted is still unclear.

The Trial Court also recognized the importance of the grounds alleged for challenging the absentee ballots which were thrown out by the Board of Election Supervisors. One of the ballots was allegedly signed by Annie Farris, a nursing home resident, who was not allowed to vote at the polls because she had already voted absentee. Ms. Farris testified that she did not request an absentee ballot, she did not vote absentee, and the signatures on the application and the ballot were not her signatures. An absentee ballot was cast for Nasif Johnson, a resident of Las Vegas, Nevada, who testified that he has not voted in Jonesville since 1977. He also stated that he did not request an absentee ballot, he did not authorize anyone to make a request on his behalf, and the signature on the ballot was not his signature. Jim Farris testified that the absentee ballot cast for him did not contain his signature, that he did not request the ballot, and that he has lived outside the Town of Jonesville for one and a half years. The other absentee ballots were thrown out because the ballots were not witnessed as required by law, however, the signatures were alleged to be forgeries and the individuals reside outside Jonesville. The Trial Court noted that Mr. Savage challenged 25 other absentee ballots, which were counted by the Board of Election Supervisors. Of the twenty-five counted, seven were found to reside outside the Town of Jonesville and two were the forged ballots of Sherwin Cummings and Lewis Johnson.
[2] These situations would include voting machines breaking during the election, power failures, voting machines falling off trucks, flooding, hurricanes, election commissioners misreading voting precincts, etc....