883 So.2d 537 (2004)
Sandra Cabrina JENKINS
v.
Kimberly WILLIAMSON-BUTLER, Clerk of Court, Criminal District Court for the Parish of Orleans, and Chief Election Officer for the Parish of Orleans, and Fox McKeithen, Secretary of State and Chief Election Officer for the State of Louisiana
No. 2004-CA-1726.
Court of Appeal of Louisiana, Fourth Circuit.
October 8, 2004.
*538 Ronald L. Wilson, New Orleans, Counsel for Plaintiff/Appellee.
Deborah L. Wilson, New Orleans, Counsel for Defendant/Appellant, Kimberly Williamson Butler.
Court composed of Judge LEON A. CANNIZZARO Jr., Judge ROLAND L. BELSOME, Judge Ad Hoc SUSAN M. CHEHARDY, Judge Ad Hoc ROBERT D. DOWNING, Judge Ad Hoc JAMES E. KUHN.
BELSOME, J.
These are consolidated cases contesting results from the election held September 18, 2004. For the sake of clarity of our opinions rendered this date, we issue separate opinions in the consolidated cases of 2004-CA-1725 and 2004-CA-1726. Petitioner, Sandra Cabrina Jenkins, a candidate for the Orleans Parish Juvenile Court judgeship and petitioner, Sandra Wheeler Hester, a candidate for the Orleans Parish School Board District 3 seat, lost their respective races.
*539 Ms. Jenkins failed to qualify for the runoff election, placing third with only a margin of 276 votes separating second and third place. The results from the September 18, 2004 parish wide election for Judge, Section "C," Orleans Parish Juvenile Court were as follows: David L. Bell, received 23,221 votes (30%); Yolanda King received 18,615 votes (24%); Sandra Cabrina Jenkins received 18,339 votes (23%); Kim O'Dowd received 12,186 votes (16%); and Robin Shulman received 5,757 votes (7%).
Ms. Jenkins filed her suit in the Civil District Court for the Parish of Orleans seeking a new election based on the grounds that substantial irregularities, which plagued the September 18, 2004 election, affected 20% to 25% of the registered voters. Further, given the closeness of the second and third place candidates, those irregularities cast doubt on the outcome of the election.
The trial court ruled in favor of Ms. Jenkins and ordered that the restricted citywide election be held for Judge, Section "C," Orleans Parish Juvenile Court on November 2, 2004 among candidates David L. Bell, Yolanda King, Sandra Cabrina Jenkins, Kim O'Dowd and Robin Shulman. Defendant, Kimberly Williamson Butler appealed.[1]
First this court will address whether the trial court erred in finding the Clerk of Court a proper party defendant and dismissing her Exception of No Cause/No Right of Action. This court recognizes that the Secretary of State is a necessary party to the instant action. La. R.S. 18:1402.[2] However, there is no prohibition for the plaintiff to bring an action against an ancillary defendant. Thus, this court affirms the trial court's ruling that Kimberly Williamson Butler, in her capacity as the Clerk of Criminal Court for the Parish of Orleans, is a proper party defendant.
The second and final issue for review raised by the Appellant/Clerk of Court is whether the trial court exceeded its authority granted by La. R.S. 18:1432 in nullifying the election and ordering a restricted election. La. R.S. 18:1432(A) gives the court guidance as to when an election may be declared void. La. R.S. 18:1432(A) reads:
If the trial judge in an action contesting an election determines that: (1) it is impossible to determine the result of election, or (2) the number of qualified voters who were denied the right to vote by the election officials was sufficient to change the result in the election, if they had been allowed to vote, or (3) the number of unqualified voters who were allowed to vote by the election officials was sufficient to change the result of the election if they had not been allowed to vote, or (4) a combination of the factors referred to in (2) and (3) herein would have been sufficient to change the result had they not occurred, the judge may render a final judgment declaring the election void and ordering a new primary or general election for all the candidates, or, if the judge determines that the appropriate remedy is the calling of a restricted election, the judge may render a final judgment ordering a *540 restricted election, specifying the date of the election, the appropriate candidates for the election, the office or other position for which the election shall be held, and indicating which voters will be eligible to vote.
The standard of review this court must apply to the trial court's findings of fact is one of manifest error. Unless the trial court's findings of fact are manifestly erroneous or clearly wrong, they must be accepted. Rosell v. ESCO, 549 So.2d 840 (La.1989). The trial court had the opportunity to listen to the testimony of witnesses and review all exhibits presented.
In reviewing the testimony and exhibits presented at trial, Judge Magee found that a substantial number of irregularities were experienced during the September 18, 2004 election. Some of those irregularities included the late delivery and set up of approximately two hundred eighty-nine (289) voting machines. These voting machines represented nearly one-third (1/3) of the total machines used in the citywide election. The trial judge found that voting machines were not put into service until two (2), four (4) and in many instances eight (8) hours after the statutorily mandated starting hour of 6:00 a.m. The court further found that these irregularities were of such a serious nature as to deprive voters from to freely expressing their will. The trial court accepted into evidence exhibits demonstrating the effect of the irregularities presented at the ninety (90) precincts in question. For instance, one precinct submitted a list of fourteen (14) registered voters who were not allowed to vote because the machines did not arrive at the site until 11:23 a.m. Furthermore, fifty-seven (57) complaint forms were received by the Secretary of State's office on election day. The testimony of the Secretary of State, Fox McKeithen summed it up best by stating that the election was the "biggest fiasco in New Orleans election history" and that he had "never been to a rodeo quite like this one."
At the conclusion of the trial on the merits, the trial judge rendered an opinion reasoning that due to the substantial number and serious nature of the irregularities in the September 18, 2004 election it was impossible to determine the number of registered voters that were affected by the late start up or late arrival of voting machines, ultimately making it impossible to determine the result.
With the adoption of the current Election Code, effective January 1, 1978, La. R.S. 18:1432 no longer provides language requiring the challenger in an election contest to prove "but for" the alleged fraud or irregularities, the challenger would have prevailed. Adkins v. Huckabay, 99-3605 (La.2/25/00), 755 So.2d 206, 222 n. 21. A candidate filing a petition contesting an election must show that because of fraud or irregularities, the outcome of the election is impossible to determine. Savage v. Edwards, 98-1762 (La. App. 3 Cir. 11/23/98), 728 So.2d 428. Thus, it is the effect of the irregularity on determining the outcome, rather than the fact of the irregularity itself that must be considered. Id.
A trial judge is not limited to strictly numerical considerations in declaring an election void. Adkins, supra (Lemmon, J., dissenting). Moreover, "[i]n determining whether to declare an election void under La. R.S. 18:1432(A), a judge can and should consider whether the proven frauds or irregularities are of such a serious nature so as to deprive the voters of the free expression of their will." Id. Even prior to the change in the language of La. R.S. 18:1432, the Supreme Court stated that there was an alternative to the "but for" burden placed on a candidate, recognizing that when irregularities are of *541 such a serious nature as to deprive the voters of the free expression of their will, declaring the entire election a nullity is the proper remedy. Adkins, supra quoting Garrison v. Connick, 291 So.2d 778 (La.1974), quoting Dowling v. Orleans Parish Democratic Comm., 235 La. 62, 102 So.2d 755 (1958). Clearly, that is the situation presented in the instant case. This court finds that the trial court's determination that irregularities experienced in the September 18, 2004 citywide election rose to the level of showing that the electorate was deprived of the free exercise of their will, demanded nullification of the election.
The fate of our democracy rests on the electorates' belief and faith that every vote counts and will be counted. Thomas Jefferson stated over 150 years ago that, "[it is] by their votes the people exercise their sovereignty". Montesquieu, Spirit of the Laws. While this court recognizes calling a new election is a drastic remedy, given the gravity of the circumstances, a necessary one. Considering the trial court's factual findings, we must affirm.
AFFIRMED.
CANNIZZARO, J., Concurs in Part and Dissents in Part.
KUHN, Judge Ad Hoc, dissenting.
CANNIZZARO, J., Concurring in Part and Dissenting in Part.
Although I concur in the majority's finding that the irregularities in the election make it impossible to determine the result of the election, I dissent with respect to the remedy prescribed by the majority. Because certain precincts were not open for the hours mandated by law, the election should be continued, not nullified. I would require the Secretary of State to provide a special ballot in the November 2, 2004 election for the affected precincts. This ballot would include the five candidates for the position of Judge, Orleans Parish Juvenile Court, Section "C". Furthermore, I would permit any registered voter, who was qualified to vote at the time of the September 18 election and who did not, in fact, vote in that election, to cast a ballot in the judgeship race. At the close of the polls on November 2, 2004, the votes cast for each candidate in the judgeship race on that date would be added to the votes cast for each candidate in the September 18 election to determine whether there is a winner in the judgeship race or whether a run-off must be held between the two candidates receiving the most votes.
JAMES E. KUHN, J. Ad Hoc, dissenting.
I respectfully dissent from the majority opinion as I do not believe the irregularities which arose in the September 18, 2004 election in Orleans Parish rise to the status or magnitude to warrant the vacating of a duly-conducted election, a proposition that the court should be loathe to sanction.
Initially I note that the majority opines the standard of review in this case is manifest error. While I certainly agree that the factual findings in an election suit, like those in any lawsuit, are subject to the manifest error standard of review, it would appear that the conclusions of the trial court should be reviewed under either a legal error standard or for an abuse of discretion.
It is well-settled, however, that the burden of proof in election contest suits requires that Sandra Cabrina Jenkins prove by a preponderance of the evidence that the irregularities affected the outcome of the election. See Kelly v. Village of Greenwood, 363 So.2d 887; Walsh v. Rogillio, XXXX-XXXX (La.App. 1st Cir.9/7/00), 768 So.2d 653.
*542 In her reasons for judgment, the trial court found the following "extensive irregularities,"
 The notice of inspection was not served upon the candidates in accordance with the Election Code,
 Candidates were not properly noticed of the location of the inspection of the voting machines prior to the September 18th election,
 Candidates were not informed of the changed date of inspection,
 289 voting machines were not powered-up by 6 a.m.,
 Many deputy custodians were not on site to open premises for delivery of machines,
 Most of those precincts affected did not get voting machines until after 10:30 a.m., that many were delivered after 12:30 p.m. and that several machines were delivered after 2:00 p.m. on election day,
 Voters were not able to cast their votes within the times prescribed by the Election Code,
 Voters did not vote as a result and
 The chain of custody was broken when the trucks carrying the voting machines were left unattended with the keys in the ignition.
The result of an election, in which electors have had a fair and free opportunity to express their will, and have so expressed it, will not be set aside merely because of failure of election of officials to perform some duty prescribed by law or to discharge them in exact manner designated. Jarreau v. David, 74 So.2d 218 (La.App. 1st Cir.1954). The irregularities must be of a serious nature. See Moreau v. Tonry, 339 So.2d 3 (La.1976). At a minimum, the party contesting an election must show that because of the irregularities the outcome of the election is impossible to determine; thus, it is the effect of the irregularity on determining the outcome, rather than the fact of an irregularity by itself that guides the court. See Nugent v. Phelps, 36,366 (La.App.2d Cir.4/23/02), 816 So.2d 349; La. R.S. 18:1432A.
Applying these standards to the list of irregularities found by the trial court, only the irregularities that "Voters were not able to cast their votes within the times prescribed by the Election Code," and "Voters did not vote as a result" meet the requisite threshold to support plaintiff's burden of proof. And despite the lengthy trial and many documents examined, the record is devoid of any evidence demonstrating if or how the will of the voters was frustrated.
Although the trial court notes that 289 of the 834 machines were turned on after 6:00 A.M., there is no evidence that any of the machines were absent for the entire day. Rather, some machines were turned on late, many of which were in the "10-minute window." Jenkins' brief lists the machines that were turned on late and the times they were turned on. Of the almost 300 machines listed only 8 were turned on after 1 P.M. Thus, the trial court's finding that "the irregularity of missing voting machines ... changed the election totals" is erroneous under any standard of review.
The trial court concluded that "the voters through out the city were constructively denied their right to vote." But this conclusion is unsubstantiated by the record. Indeed, the Secretary of State offered unrefuted evidence that Orleans Parish had a higher voter turnout than that of the entire State of Louisiana. That a single voter did not return to vote after delivery of the machine for reasons not explained is not the disenfranchisement showing needed to justify the overturning of the election results. And while the trial *543 court cites the complaints phoned into the Secretary of State's office as evidence of disenfranchisement, of the 57 calls only five indicated an inability to vote due to the missing machines and none testified at the trial of this matter.
Irregularity in an election will not invalidate the election if no uncertainty is cast on the election. Garrison v. Connick, 291 So.2d 778 (La.1974). Given the fact that all five candidates for this office were equally affected, lateness of the machine delivery does not bring about the requisite uncertainty necessary to warrant nullification of the election.
A disruption of voting for short periods of time is insufficient to upset an election. Huckaby v. Hunter, 427 So.2d 1 (La.App. 2d Cir.), writ denied, 427 So.2d 1197 (La.1983). The disruption must be of such a serious nature that voters have been denied their free expression. Moreau, 339 So.2d at 4. Candidates need to produce sufficient evidence that voters were denied the right to vote or that the will of the electorate is undiscoverable to be successful in an election contest suit such as this. Hughes v. Lombard, 626 So.2d 582 (La.App. 4th Cir.), writ denied, 627 So.2d 640 (La.1993).
Policy concerns in a democracy are an appropriate consideration in election contest suits. And the court must loathe upsetting elections. Here, the voter turnout exceeded the statewide average and all candidates were equally affected. Given the dearth of evidence, Jenkins simply failed to meet her burden of proof. We should resist the temptation of having two elections: one at the polls initially and another when irregularitiesnot proven to have effected the free expression of the electoratehave arisen. Accordingly, I dissent.
NOTES
[1] Intervenor, David L. Bell, filed a brief as an appellant but did not file a motion to appeal. Further, a motion to dismiss Mr. Bell's appeal because it was not properly appealed was granted. Therefore, this opinion does not address any assignments of error set forth in intervenor's brief.
[2] The Secretary of State, a statutorily mandated defendant, did not appeal the trial court's judgment in Jenkins v. Kimberly Williamson Butler, et al., Civil District Court Case No. 2004-173781.