DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**S.S.,** a child,
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

No. 4D13-4125

[January 21, 2015]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Stacy M. Ross, Judge; L.T. Case No. 13002730DLOOA.

Carey Haughwout, Public Defender, and Alan T. Lipson, Assistant Public Defender, West Palm Beach, for appellant.

Pamela Jo Bondi, Attorney General, Tallahassee, and Don M. Rogers, Assistant Attorney General, West Palm Beach, for appellee.

LEVINE, J.

S.S., a child, appeals the order withholding an adjudication of delinquency for resisting arrest without violence. We find that the trial court erred in denying the motion for judgment of dismissal because the police officer who detained appellant was not engaged in the lawful execution of a legal duty due to the fact that the police officer did not have reasonable suspicion that appellant was committing a crime.

Two officers from the Miramar police department responded to a dispatch. Upon arriving at the scene, officers observed a group of juveniles "causing a disturbance across the street from the incident location." One officer estimated there were about thirty juveniles, and the other officer estimated there were about twenty juveniles. According to one officer, the juveniles, as a group, "were exhibiting hand gestures, aggressive behavior," "screaming obscenities," and "cursing across the street."

When the officers exited their vehicles, about half of the juveniles ran away. One officer told the remaining juveniles to sit on the ground while he conducted an investigation. All of the juveniles complied with the officer

except for appellant.

One officer testified that appellant was told to sit on the ground several times but appellant refused. Appellant started to walk away but the officer grabbed appellant's left bicep in an attempt to have appellant sit on the ground. Appellant pulled away and continued to walk away. The officer grabbed appellant again, and appellant then pushed the officer and attempted to punch him. The officer gained control of appellant and placed appellant on the ground, where appellant continued to resist. Another officer assisted in restraining appellant.

On cross-examination, the officer admitted he did not see appellant fighting. The officer further admitted that he witnessed only yelling, and that appellant was one of the juveniles taking part in the disturbance by screaming and cursing across the street. The officer testified:

> Q You didn't see [appellant] threatening anyone?
>
> A Actually, I did. She was one—She was involved.
>
> Q Really?
>
> A Yes. She was screaming across the street. She was one of the juveniles taking part in the disturbance.
>
> Q You didn't see her threatening anyone?
>
> A She was cursing across the street.

The officer testified that he did not see appellant do anything illegal or criminal apart from the screaming and cursing that was part of the disturbance. The other officer stated on cross-examination that he did not see appellant do anything illegal. Neither officer testified to any specific words uttered by appellant during the disturbance.

The trial court denied appellant's motion for judgment of dismissal. The trial court found that the officer was in the lawful execution of a legal duty. The trial court stated that "the officer shows up and actually sees the defendant engaging in the screaming, the cursing, and the yelling. They could be investigating a breach of the peace." The trial court relied on the disorderly conduct statute, section 877.03, Florida Statutes (2013), by stating, "So, the 'affect the peace and the quiet of persons who may witness them' is what I'm going under." The trial court found appellant guilty. This appeal ensues.

2

The denial of a motion for judgment of dismissal is reviewed de novo. *R.H. v. State*, 56 So. 3d 156, 157 (Fla. 4th DCA 2011). "If the evidence, taken in a light most favorable to the state does not support a conviction, the motion must be granted. If the state establishes the existence of each element of the crime charged, then the motion must be denied." *Id.* (citation omitted).

Section 843.02, Florida Statutes (2013), provides, in pertinent part, that "[w]hoever shall resist, obstruct, or oppose any officer . . . in the lawful execution of any legal duty, without offering or doing violence to the person of the officer, shall be guilty of a misdemeanor of the first degree." In other words, to support a conviction for resisting without violence, the state must prove: "(1) the officer was engaged in the lawful execution of a legal duty; and, (2) the actions of the defendant obstructed, resisted or opposed the officer in the performance of that legal duty." *A.W. v. State*, 82 So. 3d 1136, 1138 (Fla. 4th DCA 2012) (citation omitted).

"In [resisting without violence] cases involving an investigatory detention, it is necessary for the State to prove that the officer had a reasonable suspicion of criminal activity." *A.T. v. State*, 93 So. 3d 1159, 1160 (Fla. 4th DCA 2012) (citation omitted). Thus, whether the officer was engaged in a lawful duty turns on whether the officer had a reasonable suspicion that appellant had committed, was committing, or was about to commit the act of disorderly conduct when he instructed appellant to sit on the ground. *Popple v. State*, 626 So. 2d 185, 186 (Fla. 1993) (To conduct an investigatory stop, a police officer must have "a well-founded, articulable suspicion" "that a person has committed, is committing or is about to commit a crime."). "Whether an officer's suspicion is reasonable is determined by the totality of the circumstances which existed at the time of the stop and is based solely on facts known to the officer before the stop." *Fuentes v. State*, 24 So. 3d 1231, 1234 (Fla. 4th DCA 2009).

Section 877.03, Florida Statutes (2013), which criminalizes breach of the peace and disorderly conduct, provides as follows:

> Whoever commits such acts as are of a nature to corrupt the public morals, or outrage the sense of public decency, or affect the peace and quiet of persons who may witness them, or engages in brawling or fighting, or engages in such conduct as to constitute a breach of the peace or disorderly conduct, shall be guilty of a misdemeanor of the second degree . . . .

To withstand constitutional challenge, in *State v. Saunders*, 339 So. 2d

641, 644 (Fla. 1976), the supreme court construed the statute to limit its application to "words which 'by their very utterance . . . inflict injury or tend to incite an immediate breach of the peace,' or to words, known to be false, reporting some physical hazard in circumstances where such a report creates a clear and present danger of bodily harm to others." *Id.* (citations omitted). In other words, "no words except 'fighting words' or words like shouts of 'fire' in a crowded theatre fall within its proscription." *Id.* (citation omitted).

In *C.N. v. State,* 49 So. 3d 831, 832 (Fla. 2d DCA 2010), the police responded to break up a crowd of juveniles that included the defendant, who was "shouting and using foul language" and who refused to comply with the officer's orders to leave. The Second District held that the defendant's actions did not constitute disorderly conduct. Furthermore, because the officer did not have reasonable suspicion that the defendant was committing a crime, the defendant did not commit the offense of resisting without violence. The court noted that "[i]n order to prove disorderly conduct based on words alone, the State must show that the words either caused a crowd to gather, thereby resulting in safety concerns, or that the words incited a crowd to engage in an immediate breach of the peace." *Id.* In *C.N.,* there was no evidence of fighting or that the defendant instigated the gathering.

In the present case, although there was testimony that the juveniles were exhibiting "hand gestures" and "aggressive behavior," this testimony related to the juveniles' behavior as a group, and not to appellant specifically. Rather, as to appellant, the evidence showed only that appellant engaged in screaming and cursing, which was insufficient to constitute disorderly conduct. Like in *C.N.,* there was no evidence that appellant was fighting or any evidence that appellant instigated the crowd. Because the officer did not have reasonable suspicion that appellant was committing the offense of disorderly conduct, the officer was consequently not engaged in the lawful execution of a legal duty, and thus appellant could not be convicted of the crime of resisting without violence.

Similarly, in *A.S.C. v. State,* 14 So. 3d 1118, 1119 (Fla. 5th DCA 2009), the trial court erred in denying a motion for judgment of dismissal for disorderly conduct where the evidence showed only that the defendant "may have been loud, and she may have been profane, but the record" was "devoid of evidence that her words either incited or were even intended to incite others to breach the peace, or posed an imminent danger to others." Like in *A.S.C.,* here appellant may have been loud and profane, but the record was devoid of evidence that her words incited or were intended to incite others to breach the peace, or posed an imminent danger to others.

4

The dissent acknowledges *C.N.* and *A.S.C.*, but highlights no testimony showing that appellant "caused a crowd to gather, thereby resulting in safety concerns, or . . . . incited a crowd to engage in an 'immediate breach of the peace.'" Although the officer characterized appellant's actions as "threatening," the transcript does not support this characterization. When specifically asked what threatening acts appellant committed, the officer testified only that he saw appellant screaming and cursing. There was no testimony regarding the specific words used by appellant. Although appellant told the officer to "go to hell," this statement was made only after the officer repeated commands to appellant to sit on the ground. A detention cannot be justified based on statements appellant made after the officer's commands. *Pritchett v. State*, 677 So. 2d 317, 320 (Fla. 1st DCA 1996). Moreover, there was no evidence in the record that the statement "go to hell" did anything to "incite others to breach the peace" or "posed an imminent danger to others." *A.S.C.*, 14 So. 3d at 1119. The officer did not articulate any objective facts which would establish that appellant made any threats to anyone. *See Forman v. State*, 128 So. 3d 817, 820 (Fla. 2d DCA 2013) (finding that although officer testified appellant was making "furtive movements" which caused the officer to be concerned for his safety, the officer "failed to testify to any objective circumstances that would support a finding that he had a reasonable belief that [appellant] posed a threat to the officers at the scene").

In sum, because the evidence showed only that appellant engaged in screaming and cursing, and because this is insufficient to constitute disorderly conduct, the trial court erred in denying the motion for judgment of dismissal. As such, we reverse the judgment and sentence.

*Reversed.*

FORST, J., concurs.
KLINGENSMITH, J., dissents with opinion.

KLINGENSMITH, J., dissenting.

I dissent from the majority's opinion and would affirm the trial court's order denying the motion for judgment of dismissal and ultimate finding of guilt.

Upon arriving at the scene, the officer testified that he "observed a large group of juveniles, about thirty juveniles, causing a disturbance across the street from the incident location." While the juveniles as a group, including appellant, were "exhibiting hand gestures, aggressive behavior,"

5

and were "screaming obscenities," the testimony presented showed that appellant herself was doing more.

After the officer exited his vehicle, half of the juveniles fled in different directions, while the other half remained at the scene. They were told to sit on the ground while he conducted an investigation. This officer did not know if the juveniles were gang members, or whether any weapons were involved. All of the juveniles complied with the request to sit, except for appellant who refused several verbal requests to sit on the ground, stating she didn't have to listen to the officer, and telling him to "go to hell." When appellant began to walk away, the officer grabbed her left bicep in an attempt to sit her on the ground. She pushed the officer several times and attempted to punch him in the face. She was eventually placed into custody. Nowhere in the record was there any indication that appellant's detention was in any way based on statements she made after the officer's commands.

Based on his independent observation, the investigating officer could have reasonably suspected either a disturbance of the peace had occurred, as was argued in the trial court, or perhaps an assault. *See* §§ 784.011 & 877.03, Fla. Stat. (2013). Whether or not to bring charges were dependent upon the outcome of any investigation undertaken by the officer. Along with the officer's observations of the group as a whole and appellant in particular, the officer had reasonable suspicion under the "totality of the circumstances" to believe that a crime was being committed, or about to be committed. Therefore he was engaged in the lawful execution of a legal duty when he detained appellant along with the group of juveniles to pursue an investigation.

The majority appears to conclude that the crime of "disorderly conduct" could not have occurred under these circumstances. However, disorderly conduct can be founded on words alone if the words either caused a crowd to gather, thereby resulting in safety concerns, or if the words incited a crowd to engage in an "immediate breach of the peace." *C.H.C. v. State*, 988 So. 2d 1145, 1146–47 (Fla. 2d DCA 2008); *A.S.C. v. State*, 14 So. 3d 1118, 1119 (Fla. 5th DCA 2009). Although one officer testified that appellant was screaming and cursing across the street, that officer also testified that she was threatening people. The fact that he did not articulate the precise words used in these threats does not negate the fact that threats were made.

Although the majority states that the officer characterized appellant's actions as "threatening," they believe the transcript does not support this characterization. However, when the officer was asked if he saw appellant

threatening anyone, he testified, "Actually, I did. She was one—She was involved." He went on to testify that he saw her "scream" and "curse." As a result, my colleagues in the majority interpret the officer's testimony to mean that he did not see appellant do anything illegal or criminal apart from the screaming and cursing that was part of the disturbance. This testimony, as quoted in the majority opinion, was susceptible of differing interpretations. Neither party sought clarification from the officer about appellant's precise conduct or words. However, his statements that she "screamed" and "cursed" could also be fairly interpreted as merely describing the manner and context in which the threats were delivered, rather than an attempt to define the threats themselves. What is certainly clear is that appellant's statements were understood by the officer arriving on the scene as "threats," thus prompting his intervention.

According to the case law relied on by the majority in reaching its decision, *C.N. v. State*, 49 So. 3d 831, 832 (Fla. 2d DCA 2010), appellant's role in instigating the gathering is a relevant factor to be considered in whether she breached the peace. The only way to make that determination was by conducting an investigation. These observed threats had the potential of taking her conduct beyond mere words and obscenities and into the realm of unlawful conduct. "[P]rotected speech can be rendered unprotected by a defendant's additional physical actions." *Barry v. State*, 934 So. 2d 656, 658 (Fla. 2d DCA 2006).

Whether the facts as gathered would have been sufficient to secure a conviction on any charges is not the issue here. While the majority highlights the fact that another officer at the scene stated on cross-examination that he did not see appellant do anything illegal, this is not dispositive of the matter – the other responding officer testified that he did see the appellant engaged in possible illegal conduct, thus creating an issue of fact properly resolved by the trial judge as factfinder. At the very least, the appellant's observed actions were sufficient to reasonably allow the officer to conduct an investigation at the scene to determine the extent of appellant's involvement, including whether she was involved in causing the crowd to gather, incited the crowd, or otherwise presented a safety risk. Taken in the light most favorable to the State, these acts were sufficient to conclude that the officer was performing a legal duty during this encounter.

In sum, the observed acts of appellant that resulted in her detention had the potential to meet the criteria for disorderly conduct. Therefore, the officer had the requisite reasonable suspicion to investigate, and was thus performing a legal duty when he sought to obtain appellant's

compliance with his instructions. *See E.A.B. v. State*, 851 So. 2d 308, 311 (Fla. 2d DCA 2003). For these reasons, I would affirm.

\*　　\*　　\*

***Not final until disposition of timely filed motion for rehearing.***