# Third District Court of Appeal
## State of Florida

Opinion filed March 7, 2025.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D25-0345
Lower Tribunal No. F24-22804
_____


**Markeith Thomas,**
Petitioner,

vs.

**State of Florida, et al.,**
Respondents.


A Case of Original Jurisdiction – Habeas Corpus.

Carlos J. Martinez, Public Defender, and John Eddy Morrison, Assistant Public Defender, for petitioner.

Geraldine Bonzon-Keenan, Miami-Dade County Attorney, and Shanika A. Graves, Assistant County Attorney; James Uthmeier, Attorney General, and Camilo Montoya, Assistant Attorney General, for respondents.

Before LOGUE, C.J., and EMAS and FERNANDEZ, JJ.

PER CURIAM.

Denied.

LOGUE, C.J., and FERNANDEZ, J., concur.

EMAS, J., dissenting.

I respectfully dissent.

In this petition for writ of habeas corpus, Markeith Thomas challenges the legality of his continued detention, contending that the trial court impermissibly found probable cause for the crimes of disorderly conduct and resisting a law enforcement officer without violence. For the reasons that follow, I would grant the petition and direct the trial court to restore Markeith Thomas to his pretrial release status.[1]

On January 29, 2025, Thomas was arrested for disorderly conduct (section 877.03, Florida Statutes (2025)) and resisting a law enforcement

---

[1] Thomas had a pending, unrelated felony case for which he had already posted a bond and was released. Following his arrest in the instant case for disorderly conduct and resisting an officer without violence, he was brought before a first appearance judge, who found probable cause for the two misdemeanors and set a bond amount for each. However, he ordered Thomas to be held without bond on the unrelated felony case until the trial judge on that case could consider whether to revoke his pretrial release. See § 903.0471, Fla. Stat. (2025) (providing in pertinent part: "A court may, on its own motion, revoke pretrial release and order pretrial detention if the court finds probable cause to believe that the defendant committed a new crime while on pretrial release . . . ."). Thomas was brought before the felony trial court judge, who did revoke his pretrial release on the pending felony, based upon a finding of probable cause to believe Thomas committed the crimes of disorderly conduct and resisting an officer without violence.

2

officer without violence (section 843.02, Florida Statutes (2025)). The trial court judge found probable cause for both charges based upon the contents of the arrest form. The narrative of the arrest form stated:

> On 1/29/2025, at approximately 1722 HRS, officers from the City of Miami and I responded in emergency mode to the incident location at 1143 NW 64 St concerning reports of several individuals engaged in a fight (cross reference case #2501290006548).[2] Upon arrival, I observed a verbal altercation involving numerous people outside the premises. The defendant Markeith Thomas, was irate and yelling, creating a public and disturbance that drew the attention of nearby residents. The defendant was given a lawful order by uniformed City of Miami Officers to leave the area; however, he refused to comply. During this time, Mr. Thomas was yelling and continued to disregard the officers' verbal commands. As units and I attempted to place him in handcuffs, he began actively resisting by tensing his arms, which made it difficult for us to secure him. Despite being instructed multiple times to stop resisting and to place his hands behind his back, he continued to disobey. Eventually, we were able to take the defendant into custody.

The above allegations are legally insufficient to support a finding of probable cause for the crime of disorderly conduct. Section 877.03, Florida Statutes (2025), entitled "Breach of the peace; disorderly conduct" provides:

> Whoever commits such acts as are of a nature to corrupt the public morals, or outrage the sense of public decency, or affect the peace and quiet of persons who may witness them, or engages in brawling or fighting, or engages in such conduct as to constitute a breach of the peace or disorderly conduct, shall

---

[2] The record contains no information regarding this cross-referenced police case number, nor any indication that trial court was made aware of or considered the circumstances or allegations in that cross-referenced case.

be guilty of a misdemeanor of the second degree, punishable as provided in s. 775.082 or s. 775.083.

While one might understandably read the acts alleged in the arrest form as falling within the broad scope of the above statutory language, it must be considered against the backdrop of long-standing and well-established decisions of the Florida Supreme Court, narrowing the statute's language to withstand overbreadth and vagueness challenges and pass constitutional muster.

In State v. Saunders, 339 So. 2d 641 (Fla. 1976), an off-duty policeman sought to arrest an individual named Stephens for disorderly conduct, because Stephens was "confronting people on the street and appearing to hassle with them" while selling newspapers. Id. at 641. Saunders apparently intervened and attempted to resist or prevent the officer from arresting Stephens, and was himself charged by information with resisting an officer with violence. Saunders filed a motion to dismiss the resisting charge, which the trial court granted "on the ground that the arrest of Stephens, which Saunders concededly resisted with force,[3] was unlawful in that it was

---

[3] At the time of Saunders' arrest, the law in Florida "permitted citizens forcibly to resist unlawful arrests." State v. Saunders, 339 So. 2d 641, 642 n.2 (Fla. 1976). The Florida Legislature later enacted a law prohibiting a person from using force (or the threat of force) in resisting an unlawful arrest. The current version of that statute provides:

predicated on an unconstitutional statute, to-wit: the Breach of Peace Statute, Florida Statute 877.03." Id.

The Florida Supreme Court took review because the trial court's order passed upon the validity of a state statute. Id. The Court concluded there was no probable cause to justify the arrest of Stephens for the offense of disorderly conduct, and, because there was no lawful basis for the arrest of Stephens, the arrest of Saunders for resisting a law enforcement officer was likewise unlawful. Id. at 642. The Court affirmed the trial court's order dismissing the resisting charge against Saunders. Id. at 644.

As to the constitutionality of the disorderly conduct statute, however, the Court held that the statute "as narrowed in a series of decisions including today's, is not facially incompatible with the state or federal constitutions." Id. at 642. The Court reviewed the history of federal and Florida cases construing the disorderly conduct statute, recognizing "Special rules of decision apply in cases where a statute makes speech punishable as a

---

A person is not justified in the use or threatened use of force to resist an arrest by a law enforcement officer, or to resist a law enforcement officer who is engaged in the execution of a legal duty, if the law enforcement officer was acting in good faith and he or she is known, or reasonably appears, to be a law enforcement officer.

§ 776.051, Fla. Stat. (2025).

5

crime." Id. at 643 (quoting Spears v. State, 337 So. 2d 977 (Fla. 1976)).  In

Spears, the Court struck down, as unconstitutional, section 847.05, Florida

Statutes (1975) a statute prohibiting the public use of "indecent or obscene"

language.[4]  Spears, 337 So. 2d at 980. Like the disorderly conduct statute,

the statute prohibiting public use of indecent or obscene language regulated

speech in a manner susceptible of making speech punishable as a crime, in

violation of an individual's constitutionally protected rights. The Saunders

Court reaffirmed Spears' narrowing construction of such statutes:

> Statutes regulating speech must "punish only unprotected speech and not be susceptible of application to protected expression." Gooding v. Wilson, 405 U.S. at 522, 92 S.Ct. at 1106, 31 L.Ed.2d at 414. Where a legislative enactment "is susceptible of application to protected speech, . . . (i)t is constitutionally overbroad and therefore is facially invalid." Lewis v. New Orleans, 415 U.S. 130, 134, 94 S.Ct. 970, 972, 39 L.Ed.2d 214, 220 (1974). Consistently with the United States Supreme Court's decisions, nobody can be punished under a statute purporting to outlaw spoken words, if the statute would be unconstitutional as applied to anybody. "This result is deemed justified since the otherwise continued existence of the statute in unnarrowed form would tend to suppress constitutionally protected rights." Coates v. City of Cincinnati, 402 U.S. at 620, 91 S.Ct. at 1691, 29 L.Ed.2d at 221.

---

[4] Section 847.05, Florida Statutes (1975) provides: Any person who shall publicly use or utter any indecent or obscene language shall be guilty of a misdemeanor . . . ." The statute was repealed in 1983.  See 1983 Laws of Florida, c. 83-214, § 20.

6

Id. at 643-44 (quoting Spears, 337 So. 2d at 980).  The Saunders Court

concluded:

> In light of these considerations, we now limit the application of Section 877.03 so that **it shall hereafter only apply either to words which "by their very utterance . . . inflict injury or tend to incite an immediate breach of the peace**," White v. State, 330 So. 2d at 7; See Chaplinsky v. New Hampshire, 315 U.S. 568, 572, 62 S.Ct. 766, 86 L.Ed. 1031 (1942); **or to words, known to be false, reporting some physical hazard in circumstances where such a report creates a clear and present danger of bodily harm to others.** We construe the statute so that no words except "fighting words" or words like shouts of "fire" in a crowded theatre fall within its proscription, in order to avoid the constitutional problem of overbreadth, and "the danger that a citizen will be punished as a criminal for exercising his right of free speech."

Id. at 644 (emphasis added) (quoting Spears, 337 So. 2d at 980).

Applying this narrowed construction of section 877.03 to the instant

allegations, as we must, it is clear that no probable cause existed for the

offense of disorderly conduct against Thomas.  The pertinent allegations

contained in the arrest form provided:

> Upon arrival, I observed a **verbal altercation** involving numerous people outside the premises. The defendant Markeith Thomas, **was irate and yelling**, creating **a public and [sic] disturbance that drew the attention of nearby residents**. The defendant was given a lawful order by uniformed City of Miami Officers to leave the area; however, he refused to comply. During this time, Mr. Thomas was yelling and continued to disregard the officers' verbal commands.

(Emphasis added.)

7

As we held in State v. McCormack, 517 So. 2d 73, 74 (Fla. 3d DCA 1987):

> Probable cause exists where the facts and circumstances known to the police officer at the time of the arrest are sufficient to warrant belief by a prudent person that an offense has been committed. Benefield v. State, 160 So. 2d 706, 708 (Fla.1964); Cross v. State, 432 So. 2d 780, 782 (Fla. 3d DCA 1983). Those facts, however, need not meet the standard of proof required to convict. State v. Outten, 206 So. 2d 392, 397 (Fla.1968); State v. Varnedoe, 443 So. 2d 201, 202 (Fla. 3d DCA 1983). Thus, "an arresting officer must have a substantial reason at the time of a warrantless misdemeanor arrest to believe from his observation and evidence at the point of arrest that the person was then and there committing a misdemeanor in his presence." State v. Yunker, 402 So. 2d 591, 593 (Fla. 5th DCA 1981).

In light of the restrictive construction of Florida's disorderly conduct statute, the allegations contained in the arrest form are simply legally insufficient to establish probable cause to arrest Thomas for disorderly conduct.  There is nothing alleged in the arrest form to indicate that Thomas used "fighting words," or "words which by their very utterance inflict injury or tend to incite an immediate breach of the peace," or "words, known to be false, reporting some physical hazard in circumstances where such a report creates a clear and present danger of bodily harm to others."

In Clanton v. State, 357 So. 2d 455 (Fla. 2d DCA 1978), a deputy on patrol in the early morning hours observed several people in and around two cars in a park.  Suspecting they might be juveniles drinking alcohol, the

8

deputy approached one of the cars and asked the driver to produce identification.  Clanton was standing outside the other car, and began to "verbally castigate" the deputy. Id. at 456.  As the deputy testified, Clanton "began to raise his voice and holler at me I had no damn right to open the door of [] that man's car . . . I didn't have a Goddamn search warrant . . . I didn't have the right to open the door and the man didn't have to tell me anything…." Id.  Clanton was eventually arrested for disorderly conduct, and a search of Clanton uncovered marijuana. Clanton was charged with marijuana possession, and he moved to suppress the marijuana as the product of an unlawful arrest.  The trial court denied the motion to suppress. Clanton entered a plea of no contest to possession of marijuana, reserving the right to appeal the trial court's denial of the motion to suppress.

On appeal, the Second District noted that the search and seizure of the marijuana could be sustained only if the initial arrest for disorderly conduct was deemed lawful.  The district court framed the issue as follows:

> From Deputy Medders' testimony it is clear that it was appellant's remarks which formed the basis of the arrest. But, did such offensive language constitute either fighting words or false words likely to cause harm? We think not.

Id. at 457.

The court held the arrest for disorderly conduct was unlawful:

9

> Fighting words are those which are likely to cause the average person to whom they are addressed to fight. No one condones the language used by appellant or his lack of respect for the officer. Lamentably, in today's society such outbursts are all too frequent. Nevertheless, appellant's obviously offensive language did not amount to such a direct personal attack on Deputy Medders as would cause an average person to resort to violence.

Id.

In the instant case, there is nothing in the arrest form that even indicates what Thomas said, much less that the words used by him constituted "fighting words" or incited an immediate breach of the peace.

Perhaps most instructive is this court's decision in Fields v. State, 24 So. 3d 646, 648 (Fla. 3d DCA 2009) in which we held "it is clear that speech alone will not generally support a conviction for disorderly conduct under section 877.03 as limited by Saunders." Moreover, and as relevant here, we noted in Fields that "the law is settled that the fact that a crowd has gathered to watch a defendant's behavior, without more, is insufficient to support a conviction of disorderly conduct." Id.; see also Baymon v. State, 933 So. 2d 1269, 1270 (Fla. 2d DCA 2006) (holding: "In this case, Deputy Bennett did not observe conduct constituting the crime of disorderly conduct. Although the deputy observed Baymon yelling and screaming, there was nothing to suggest that Baymon was inciting an immediate breach of the peace or was yelling the equivalent of "fire" in a crowded movie theatre. Baymon's arrest

10

was unlawful.") (internal citations omitted); S.S. v. State, 154 So. 3d 1217, 1219 and 1221 (Fla. 4th DCA 2015) (police officer "witnessed only yelling, and that appellant was one of the juveniles taking part in the disturbance by screaming and cursing across the street"; holding that this "the evidence showed only that appellant engaged in screaming and cursing, which was insufficient to constitute disorderly conduct."); A.S.C. v. State, 14 So. 3d 1118, 1119 (Fla. 5th DCA 2009) (holding trial court erred in denying motion for judgment of acquittal where evidence showed only that "A.S.C. may have been loud, and she may have been profane, but the record, viewed de novo, is devoid of evidence that her words either incited or were even intended to incite others to breach the peace, or posed an imminent danger to others."); Miller v. State, 667 So. 2d 325, 328 (Fla. 1st DCA 1995) ("Although appellant's voice was loud and his language may have been offensive, there is nothing in the record to indicate that his conduct incited others to breach the peace or posed an imminent danger to others. Pursuant to Saunders and its progeny, to constitute a violation of section 877.03, there must be evidence of something more than loud or profane language or a belligerent attitude.").

Because there was no probable cause to arrest Thomas for disorderly conduct, the officer was not acting "in the lawful execution of a legal duty,"

11

see section 843. 02, Florida Statutes (2025), and Thomas had the right to resist the unlawful arrest so long as he did so without using force or the threat of force. L.A.T. v. State, 650 So. 2d 214, 217 n.2 (Fla. 3d DCA 1995) ("Because one is privileged to resist peacefully an unlawful arrest, our conclusion that there was no disorderly conduct requires the reversal of the resisting arrest without violence finding as well.") (internal citation omitted); J.G.D. v. State, 724 So. 2d 711 (Fla. 3d DCA 1999) (same); C.N. v. State, 49 So. 3d 831, 833 (Fla. 2d DCA 2010) ("[T]he acts resulting in C.N.'s detention did not constitute disorderly conduct, and therefore the officer did not have the requisite reasonable suspicion. That being the case, the officer was not performing a legal duty when he arrested C.N. without a warrant.") (citations omitted).

I would grant the petition, issue the writ instanter, quash the order revoking Thomas' pretrial release status, and direct the trial court to reinstate Thomas' pretrial release status as it existed prior to his arrest on January 29, 2025. I therefore respectfully dissent from the denial of the petition for writ of habeas corpus.